CLOVER MEADOW CREAMERY CO et v NATIONAL DAIRY PRODUCTS CO et TELLING BELLE-VERNON CO et v CLOVER MEADOW CREAMERY CO et

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided March 26, 1934

Day & Day, Cleveland, and I. R. Morris, Cleveland, for Clover Meadow Creamery Co.

J. Paul Lamb, Cleveland, Tolles, Hogsett & Ginn, Cleveland, Baker, Hostetler, Sidlo & Patterson, Cleveland, for National Dairy Products Co.

Baker, Hostetler, Sidlo & Patterson, Cleveland, Tolles, Hogsett & Ginn, Cleveland, Thompson, Hine & Flory, Cleveland, and Newcomb, Newcomb & Nord, Cleveland, for Telling Belle-Vernon Co.

**OPINION**

By LIEGHLEY, PJ.

Construing all the alleged violations charged in the petition and all the activities restrained by the trial court in the light most favorable to the plaintiffs, the defendants nevertheless claim that the Burke Act enacted by the Legislature of Ohio and known as the Ohio Milk Marketing Act, §§1080-1, 1080-23, GC, effective June 22, 1933, is all-inclusive of. the entire subject matter of this litigation in all its phases, and that each and every act complained of as unlawful by the provisions of this milk act have been made lawful and legal. It is claimed and asserted that now there remains no issue to be tried by this court and that this court no longer has jurisdiction to make any order upon any issue made by the pleadings affecting any substantial right of the parties herein, for the reason that the petition does not now. charge the commission of a single act now unlawful.

The claims of the parties make it necessary to refer to §§1080-1, 1080-23, GC to ascertain some idea of the scope of the milk industry thereby placed under state control.

The reasons and purposes which inspired this legislation are fully set forth in §2 in detail. Also, reasons are briefly recited in §24 for declaring the legislation an emergency. With the exception noted in the act the entire milk industry of the state is stamped with a public interest. The initial sentence of §2 reads:

"The production, processing, distribution and sale of milk in this state as a whole, and each of said activities or operations, separately, is hereby declared to be a business charged with a public interest."

Complete control and supervision with plenary powers over the milk industry is authorized by §5. Unlimited powers of investigation, policing, examination and surveillance of the business of each and every one licensed to engage in the milk business is expressly granted to the Milk Marketing Commission. All must make application for and be granted a license to engage in the business (§7). Whoever engages in business without a license or willfully disobeys an order of the. commission, is guilty of a misdemeanor and punishable (§6). It is declared to be lawful for two or more persons, partnerships or corporations engaged in the production, distribution and sale of milk to meet and agree on prices, trade practices, classes of milk and rules and regulations for the industry, to the end that fair prices may be established, improper trade practices eliminated and unfair competition abolished, subject to the approval of the Milk Marketing Commission (§16).

With all of these things appertaining to the production and marketing of milk for food uses now made lawful by this Act, with what are these defendants charged that can be said to be not included and covered by the provisions of this Act? Is there any activity on the part of the defendants charged by plaintiffs to be unlawful that is not now transferred to the dominant control of the commission? It is our opinion and judgment that all parties hereto and all issues involved herein are subject to state control in pursuance of and in accordance with the terms of the Milk Act.

**Carlin v Hines, 107 Oh St 328;** Transfer Co. v Railway, 288 U. S. 469; U. S. Navigation Co. v Cunard Steamship Co., 284 U. S. 474.

If the plaintiffs now have any grievance in respect to any act complained of or enjoined, their remedy is by way of complaint and appeal to the duly constituted authori-

ties provided for in the Act. If not licensed, there can be no ground of complaint by one not licensed. If licensed, co-operation seems to be the ultimate aim for the common good of all. The commission is clothed with plenary powers to enforce and attain this end. For any continuation or repetition of the acts or practices by the defendants with which they are charged or were enjoined, the commission is now clothed with power and armed with the means to discipline any and all rebellious and non-conforming licensees.

It is claimed by plaintiffs that the allegations of the petition are broader than the Valentine Anti-Trust Act (§6390 et seq, GC).

It is claimed that the defendants were combining and performing by unlawful means and methods certain acts in violation of common law not expressly comprehended within the scope of the Burke Act. It is our opinion that the initial language of §16 answers these claims. "Anything in the common or statute law of this state to the contrary notwithstanding, it shall be lawful;" etc. This provision, coupled with the acts made lawful by the balance of this section, makes these claims untenable, if the Act be constitutional in all respects.

During the oral hearing of this case the constitutionality of this Ohio Milk Act was challenged, but it was suggested that the decision of this question in this court should await and would probably be determined by the decision of the Supreme Court of the United States in a case then pending involving the constitutionality of the so-called Milk Act of the state of New York.

We have examined and to some extent compared the New York Act and the Ohio Act. While there is some difference in phraseology, details and methods, the purposes, the ultimate aims, the supervisory control and scope of the industry taken over by the state are substantially the same.

In the case of People v Nebbia, 262 N. Y. 259, 186 NE 694, the accused was convicted in the lower court of violating an order of the Milk Control Board. This conviction was reviewed by the Court of Appeals of New York in the case above cited, in which the constitutionality of the New York Milk Act was questioned, and its constitutionality sustained. This decision of the New York Court of Appeals was reviewed by the Supreme Court of the United States, under the title of Leo Nebbia v People of the State of New York, decided March 5, 1934, and the decision affirmed

and the constitutionality of that act sustained.

With these facts and this law before us, the constitutionality of the Burke Act must be sustained by us.

So that, holding these views, the basis for any present judicial action in this pending case has been removed by legislative enactment. Unless extended, this Milk Act expires July 1, 1935 (§23). Any order issued herein could have no legal effect until thereafter, and not then if the Act is extended. The injunction granted below now in fact restrains nothing as all the acts enjoined are now under state control and supervision and will continue to be so long as the Act is in effect. And, by the appeal the cause was transferred to this court for trial de novo. Barnes v Christy, 102 Oh St, 160.

Trial de novo means trial in the same manner as though no trial had theretofore been had. A trial hereof would necessarily be conducted in reference to the state of the law at the time of trial and not controlled by what it was a year or two ago. Obviously, any order of this court as a result of a trial could only operate in the future and the decision could only be grounded and sustained by the law now in force. American Steel Foundries v Tri-State Council et, 257 U. S. 184; Texas Co. v Brown, 258 U. S. 466.

Plaintiffs claim, if there is to be any dismissal, the appeal only should be dismissed thereby leaving in force the injunction granted by the Common Pleas Court. The defendants claim the cause of action should be dismissed for the reason that all issues involved have become moot. Any order granted here as well as the one granted below is of no force and effect and could have no force and effect until after the state releases control of the milk industry. Such an order outstanding upon the assumption that such control will soon be relinquished or that the defendants will then renew unlawful acts and practices or that they will repeat the particular ones enjoined is unwarranted. Commercial Cable Co. v Burleson, 250 U. S. 250.

Plaintiffs filed a motion to dismiss the motion of defendants to dismiss the action on the ground that such a motion is unauthorized in Ohio procedure. If the petition fails to state a cause of action, demurrer is the method of attack, it is said, Granted that this is the prescribed form, we are not unmindful of the exception recognized by authority. Courts frequently permit one form of pleading to fill the office of another and treat a motion as a

demurrer to avoid requiring the performance of futile acts through allegiance to technical rules when the same may be done without any prejudice to either party. **Halliday v Public Utilities Commission, 118 Oh St 269.**

Entertaining the views we do, to grant the motion of plaintiffs would result in requiring that defendants ask leave to demur to the petition, which upon request would be granted and demurrer sustained. Such strict compliance with the usual procedural requirements would benefit no one concerned nor does our proposed direct action on defendants' motion to dismiss the action prejudice anyone concerned.

Mindful of the above case and other Ohio cases, we recently applied the same rule in the case of Ira J. Fulton, superintendent of banks, etc. v Frances Wetzel, No. 13768 in this court. This action was brought by Wetzel to enforce stockholders' double liability. Ira J. Fulton, superintendent of banks, became party defendant by leave of court and filed a demurrer to the petition upon the sole ground that the plaintiff did not have capacity to bring the action, for the reason that the superintendent of banks had the sole and exclusive right to prosecute. This demurrer was overruled and the superintendent later filed a motion to dismiss the action upon the same ground. Error was prosecuted from the ruling on this motion. This ground is enumerated in the statute as one available on demurrer. With these cases in mind and having concluded that the position of the superintendent was correct, we decided and entered our decision on the motion, while technical observance of prescribed rules might have required the roundabout course to the same end. Motion to certify was overruled and motion to dismiss petition in error filed as of right was sustained March 21, 1934, by the Supreme Court, No. 24644.

Regardless of the procedural question raised, it is the right if not the duty of the court, when once it has been judicially determined that the cause has become moot, to dismiss the action on its own motion. **Miner v Witt, 82 Oh St 237; State ex v Palmer, 120 Oh St 617; Travis v Pub. Comm., 122 Oh St 355.**

It is our conclusion that the motion of defendants to dismiss the action be granted and that the motion of plaintiffs to dismiss the motion of defendants be overruled with exceptions noted.

LEVINE and McGILL, JJ, concur in the judgment.