INTERSTATE NATURAL GAS CO. v. SOUTHERN CALIFORNIA GAS CO. et al.

No. 12828.

United States District Court
S. D. California, Central Division.
Jan. 29, 1952.

Guthrie, Darling & Shattuck, & Milo V. Olson, all of Los Angeles, Cal., for plaintiff.

T. J. Reynolds and L. T. Rice, Los Angeles, Cal., for Southern Cal. Gas Co.

Milford Springer, Los Angeles, Cal., for Southern Counties Gas Co.

Pillsbury, Madison & Sutro, Turner H. McBaine, Byron E. Kabot, all of San Francisco, Cal., for defendants Southern Calif. Gas Co. and Southern Counties Gas Co.

BYRNE, District Judge.

During the period from October 18, 1948 until October 25, 1950, Interstate Natural Gas Company had control of the production of natural gas which it desired to ship and sell in interstate commerce. It requested defendants, as transporters, to accomodate its supply of natural gas through defendants' pipeline to commercial and industrial users in Southern California. Defendants refused. Plaintiff filed this action for damages alleged to have been suffered by reason of defendants' refusal.

Plaintiff asserts that defendants' conduct was in violation of the provisions of the Leasing Act of February 25, 1920, 30 U.S.C.A. § 185, of the Natural Gas Act, 15 U.S.C.A. § 717, and the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1 and 2.

Defendants have filed a motion to dismiss.

The substance of the pertinent allegations of the complaint may be stated as follows: The defendants, during the period referred to in the complaint, were engaged in the transportation of natural gas in interstate commerce, and owned a pipeline system located in the states of Texas, New Mexico, Arizona and California. Defendants' pipeline was constructed upon rights-of-way across government lands under permits granted by the Secretary of the Interior pursuant to the provisions of the Leasing Act of February 25, 1920. 30 U.S.C.A. § 185. That Act required defendants to maintain such pipelines as a common carrier. Defendants agreed in writing with the Secretary of the Interior that the pipeline would be operated and maintained as a common carrier. As a common carrier of natural gas it was the duty of defendants to file a common carrier tariff and schedules showing rates and charges with the Federal Power Commission, and to transport gas for plaintiff and other shippers at reasonable and non-discriminatory rates. Pursuant to the provisions of the Natural Gas Act, 15 U.S.C.A. § 717, the rates and schedules for the transportation of gas were subject to the jurisdiction of the Federal Power Commission. Notwithstanding demands made upon them by plaintiff, defendants refused to file any rate or tariff, and refused to transport any gas for plaintiff. On October 25, 1950 defendant El Paso Natural Gas Company filed a purported rate with the Federal Power Commission for the transportation of gas through defendants' pipeline. Defendants Southern California Gas Company and Southern Counties Gas Company have never filed any rate. During the period mentioned plaintiff controlled gas in the vicinity of defendants' pipeline which it desired to ship to Southern California. Because defendants refused to act as a common carrier and transport gas for plaintiff through their pipeline, plaintiff was unable to ship or sell gas and suffered damages. Defendants, in refusing to perform their duty as a common carrier and to transport gas for any person, including plaintiff, at a reasonable and nondiscriminatory rate, dominated and monopolized the trade, producing, marketing, transporting and selling natural gas from Texas and New Mexico through the State of Arizona to California. By such monopoly defendants eliminated plaintiff as a competitor. Defendants Southern California Gas Company and Southern Counties Gas Company, on or about December 17, 1945, entered into a contract with defendant El Paso Natural Gas Company whereby said defendants purportedly obligated themselves to purchase from El Paso Natural Gas Company 91% of defendants' pipeline capacity. It is alleged that said contract is contrary to the anti-trust laws in that defendant used that contract as an excuse for not transporting plaintiff's gas.

The defendants contend that the common carrier provision of the Mineral Leasing Act was superseded and repealed by the

Natural Gas Act, and that their pipeline is not a common carrier.

█ Assuming, arguendo, that the defendants' pipeline is a common carrier, this action must be dismissed for lack of jurisdiction of the subject-matter of the action because primary administrative jurisdiction is in the Federal Power Commission and the plaintiff has failed to exhaust its administrative remedies.

█ As stated by the Supreme Court: "Congress has entrusted the administration of the (Natural Gas) Act to the Commission not to the courts. Apart from the requirements of judicial review it is not for us to advise the Commission how to discharge its functions." Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 617, 64 S.Ct. 281, 295, 88 L.Ed. 333.

█ It would serve no purpose to cite the many authorities that have reiterated the principle of primary administrative jurisdiction as the plaintiff concedes that this court does not have jurisdiction if there is any administrative question which requires prior determination by the Federal Power Commission. The plaintiff concedes that if the defendants filed a tariff rate with which it was discontented, its resort would be to the Commission, and not to the courts. But, says the plaintiff, there being no tariff rate on file, the Federal Power Commission had no jurisdiction to compel its filing. I cannot agree that a natural-gas company can avoid the jurisdiction of the Federal Power Commission by failure to conform to the provisions of the Act.

The Natural Gas Act provides, 15 U.S. C.A. 717c(c): "Under such rules and regulations as the Commission may prescribe, every natural-gas company shall file with the Commission * * * in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection, schedules showing all rates and charges for any transportation or sale subject to the jurisdiction of the Commission, and the classifications, practices, and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services."

It reasonably cannot be contended that the Commission is deprived of its primary original jurisdiction because a natural-gas company refuses to file the schedule of rates and charges referred to in the Act or fails or refuses to conform to the other requirements of the Act.

"The Commission may investigate any facts, conditions, practices, or matters which it may find necessary or proper in order to determine whether any person has violated or is about to violate any provision of this chapter * * * or to aid in the enforcement of the provisions of this chapter * * *. The Commission may permit any person to file with it a statement in writing * * * as to any or all facts and circumstances concerning a matter which may be the subject of investigation." 15 U.S.C.A. § 717m(a). "Whenever the Commission, after a hearing had upon its own motion or upon complaint * * * shall find that any rate * * * or * * * practice * * * is unjust, unreasonable, unduly discriminatory, or preferential, the Commission shall determine the just and reasonable rate, * * * practice, or contract to be thereafter observed and in force, and shall fix the same by order". 15 U.S.C.A. § 717d(a).

In the case of a recalcitrant company the Commission may enlist the aid of the courts: "Whenever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the provisions of this chapter, or of any rule, regulation, or order thereunder, it may in its discretion bring an action in the proper district court of the United States, * * * to enjoin such acts or practices and to enforce compliance with this chapter * * *." 15 U.S.C.A. § 717s.

In U. S. Navigation Co. v. Cunard S. S. Co., 284 U.S. 474, 487, 52 S.Ct. 247, 251, 76 L.Ed. 408, where the failure to file a contract with the Shipping Board was involved, the court said: "In any event, it reasonably cannot be thought that Congress intended to strip the Board of its primary

original jurisdiction to consider such an agreement * * * because of a *failure of the contracting parties to file it* * * *. A contention to that effect is clearly out of harmony with the fundamental purposes of the act * * *. For the courts to take jurisdiction in advance of such hearing and determination would be to usurp that authority." (Emphasis added.)

Here the plaintiff asserts that it complained to the defendants of their failure to file schedules and to transport its gas, but it did not complain to the Federal Power Commission. This court does not know that the Commission as the administrator of the Act, in the interest of public convenience and necessity, would have required the defendants to transport any of the plaintiff's gas. Pipelines do not have an unlimited capacity and the Act forbids a natural-gas company to abandon, without permission of the Commission, any portion of its facilities or any service rendered by means of such facilities. Section 717f(b). Whether and to what extent plaintiff should be permitted to use defendants' facilities, and what services then being rendered should be abandoned, is strictly an administrative question. And the administrative remedy is exclusive of any which may be afforded by courts, at least until the Commission has passed upon the validity of the practices and classifications involved. Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; Robinson v. Baltimore & Ohio R. Co., 222 U.S. 506, 32 S.Ct. 114, 56 L.Ed. 288; Northern Pacific R. Co. v. Solum, 247 U.S. 477, 38 S.Ct. 550, 62 L.Ed. 1221; Director General of Railroads v. Viscose Co., 254 U.S. 498, 41 S.Ct. 151, 65 L.Ed. 372; Midland Valley R. Co. v. Barkley, 276 U.S. 482, 48 S.Ct. 342, 72 L.Ed. 664.

Plaintiff seeks to avoid this rule of law enunciated repeatedly by the Supreme Court by its insistence that it asks relief, not from the unlawful practices that have been established as a result of the alleged conspiracy, but from the conspiracy itself, over which the Federal Power Commission is said to have no jurisdiction, and from which it can give no relief. This manoeuver, as a means of conferring jurisdiction on this court, is futile, for the reason that it cannot maintain its action without establishing injury. The injury can ensue only from the maintenance of the unlawful practices which are specially charged to be discriminatory. What practices are "unjust, unreasonable, unduly discriminatory, or preferential", 15 U.S.C. A. § 717d(a), is determined by the Federal Power Commission and not by the anti-trust laws. The Supreme Court has uniformly refused to permit a party under guise of suing under the anti-trust laws to seek in the courts, by indirection, determinations which are reserved for the Commission in the first instance. Keogh v. Chicago & Northwestern R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183; Central Transfer Co. v. Terminal Railroad Ass'n, 288 U.S. 469, 53 S.Ct. 444, 77 L.Ed. 899; Terminal Warehouse Co. v. Pennsylvania R. Co., 297 U.S. 500, 56 S.Ct. 546, 80 L.Ed. 827. As these cases show, the plaintiff cannot make its assault on a matter said not to be within the jurisdiction of the Commission, when adjudication must turn on matters which are within its jurisdiction. *The plaintiff cannot show damage save by showing that the Commission would approve some rate structure and some practice other than that presently existing.*

Had the plaintiffs presented their problem to the Federal Power Commission, that body would have determined to what extent, if any, and under what conditions, defendants would be required to make their facilities available to plaintiff. The Commission could also have required defendants to file a schedule of rates and conform to all other provisions of the Act. Adequate judicial review is afforded, 15 U.S. C.A. § 717r, if the plaintiff is aggrieved by the conduct of the Commission.

Absent a hearing and determination by the Commission as to the extent, if any, to which defendants should be required to make their facilities available to plaintiff, what measure of damages would this court apply? Can it be contended that this court should take evidence and determine what portion of defendants' facilities should have been made available to plaintiff and at what rates, or which of defendants'

customers, contracts and services should have been eliminated to accommodate the plaintiff?

To paraphrase Mr. Justice Sutherland in the Cunard case, supra, for this court to take jurisdiction in advance of a hearing and determination by the Commission of the administrative questions, would be to usurp that authority.

The motion to dismiss is granted.