## McCLELLAN et al. v. MONTANA-DAKOTA UTILITIES CO.

### Civ. No. 3518.

United States District Court
D. Minnesota, Fourth Division.
March 5, 1952.

Guthrie, Darling & Shattuck and Milo V. Olson, of Los Angeles, Cal., John J. Mc-Kasy, of Minneapolis, Minn., for plaintiffs.

Faegre & Benson and Armin M. Johnson, of Minneapolis, Minn., for defendant.

JOYCE, District Judge.

Defendant moves for summary judgment herein on the ground that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law; or, in the alternative, if summary judgment is not granted, that the court ascertain what material facts are controverted.

The complaint alleges that Capital Gas Corporation, hereinafter referred to as plaintiff, is a Montana corporation owning or controlling during the period 1930 until 1940 gas properties and production capable of producing in excess of 200,000,000 cubic feet of gas per day, open flow production, approximately one-third of which it would have been authorized by the United States Government to produce, and for which it had customers. Defendant is a corporation organized under the laws of the State of Delaware, with principal place of business at Minneapolis, Minnesota, and is engaged in the transportation of natural gas in interstate commerce. It allegedly owns and operates an integrated and interconnected pipeline system located in the states of Montana and North and South Dakota. Gas transported through its lines is distributed for public consumption in the three states named for domestic and commercial purposes. During the above period the gas which plaintiff claims to have had for sale required shipment and transportation through defendant's pipeline. The bulk of it was available from Government lands in the vicinity of defendant's pipelines and its gathering branches.

The controversy herein arises over defendant's alleged failure and refusal to transport plaintiff's gas at a reasonable and non-discriminatory rate over its pipeline system. Plaintiff alleges that said pipeline was constructed some time prior to 1930 upon rights of way across Government lands under permits granted by the Secretary of the Interior pursuant to the provisions of the Leasing Act of February 25, 1920, 30 U.S.C.A. § 185, and that by the

terms of said Act defendant was a common carrier under a duty to transport gas at reasonable and non-discriminatory rates for plaintiff and others who had gas to ship. It is further charged that defendant refused until some time in 1933 to transport gas at any rate, at which time it offered to transport gas at a rate so unreasonable and discriminatory as to be unusable by plaintiff, and continued its refusal to file a reasonable rate until April 2, 1949. For the purpose of convenience the rate filed by defendant in 1933 shall hereafter be designated as Rate 3–G. During this period and until June 21, 1938, it is alleged there was no administrative agency that had jurisdiction to fix the rates demanded and charged by a common carrier of natural gas.

It is further alleged that by virtue of the failure and refusal of defendant to transport gas at a reasonable and non-discriminatory rate plaintiff could not produce gas from its lands and during the period 1930 to 1940, as a direct result of such unlawful refusal, plaintiff lost all its assets consisting of gas-producing lands, wells and leases, and operating agreements on gas-producing lands in the reasonable value of $3,000,000. In addition plaintiff alleges, inconsistently with a prior allegation, that such wrongful and unlawful acts resulted in its inability to produce and sell 40,000,000 cubic feet of gas per day, for which it claims to have had customers, to its damage in the reasonable sum of $10,000,000. Said refusal is alleged to have been in restraint of trade and violative of the Sherman Anti-Trust Act, wherefore plaintiff prays that his damages be trebled in accordance with the provisions of Section 4 of the Clayton Act. 15 U.S.C.A. § 15.

In addition to being violative of the Anti-Trust Act, it is alleged that said acts are in violation of the Leasing Act of 1920 and of the Natural Gas Act, 15 U.S.C.A. § 717c. The Natural Gas Act became effective on June 21, 1938 and gave the Federal Power Commission jurisdiction over the transportation and sale of natural gas in interstate commerce and over the rates and charges therefor, 15 U.S.C.A. § 717 et seq. The Act provided that every natural gas company file with the Commission a schedule showing all rates and charges for any transportation or sale subject to its jurisdiction. Pursuant to this requirement, on or about August 29, 1938, defendant filed the rate for transportation of gas, hereinafter referred to as Rate 4–G. On December 6, 1941, proceedings were instituted before the Federal Power Commission to test these rates 3–G and 4–G, but plaintiff was not a party to these proceedings. They resulted in a determination by the Commission in 1946 that defendant's applying for and obtaining permits under the Leasing Act obligated it to maintain and operate its pipeline as a common carrier and to establish and publish reasonable and non-discriminatory rates, and that rates 3–G and 4–G were unjust, unreasonable and discriminatory. The decision of the Commission was subsequently affirmed August 4, 1948 in Montana-Dakota Utilities Co. v. Federal Power Commission, 8 Cir., 169 F.2d 392, and a new rate was thereafter filed by defendant on April 2, 1949.

The complaint is redundant in its allegations and anticipatory of all the defenses that might be raised against it. It is a chronological narration of the events, transactions and the interminable litigation by plaintiff and others preceding the bringing of this controversy into this court. Such further facts as are necessary will be stated as the need arises but I believe that the aforesaid allegations are sufficiently stated for the present purposes and substantially set out the position of plaintiff with respect to the rights and damages he claims. Previously, on February 5, 1951, the court denied a motion to dismiss because it then felt that the record did not show to a certainty that plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claims pleaded, but it did not foreclose itself from further consideration of the issues raised after the record had been augmented. Since that time and on the present motion for summary judgment the record has been supplemented by affidavits from both parties, by voluminous depositions and discovery evidence. In addition, the court is aided by a pronouncement since made by the Supreme Court of the United States,

which it feels is largely determinative of the issues here.

The substance of plaintiff's position is that it had no remedy against defendant for the claims here made until it was ultimately determined that the defendant's demanded rates, 3–G and 4–G, were unlawful because unreasonable and discriminatory, and a new rate was fixed by the Federal Power Commission. Now having secured such a determination, it claims the right to proceed with its action for damages and asks the court to take judicial notice that the rates declared to be unlawful in 1946 or 1948 would have been unlawful in the period during which the losses occurred, and so to instruct the jury, which can then in the words of plaintiff's counsel, "speculate, conjecture or ascertain what probably would have been a reasonable rate" for the period involved by considering relevant data concerning the costs of operating the pipeline, maintenance costs, etc. From there they can then go on to ascertain what damages the plaintiff has suffered.

I do not think this argument is tenable. Assuming, arguendo, that plaintiff though not a party has the benefit of the proceedings and decision of the Federal Power Commission, we then run squarely into several propositions of law that prevent the operation of such a theory.

First, the Natural Gas Act provides in Section 5(a) that the jurisdiction of the Commission to fix rates is limited to those "to be thereafter observed and in force". 15 U.S.C.A. § 717d(a). In Hope Natural Gas Co. v. Federal Power Commission, 4 Cir., 134 F.2d 287, the Federal Power Commission, while fixing rates to become effective on July 1, 1942, found that the rates charged by Hope from June 30, 1939 to that date were unjust, unreasonable and unlawful. It stated that this finding was made on the request of the City of Cleveland and "as an aid to state regulation." With respect to the power of the Commission to take such action, the court of appeals said, 134 F.2d at page 309:

"The fundamental difference between quasi-legislative and quasi-judicial power is that the one is concerned primarily with prescribing regulations

for the future, the other with determining rights in the light of what has occurred in the past. Cf. Baer Bros. Mercantile Co. v. Denver & R. G. R. Co., 233 U.S. 479, 486, 34 S.Ct. 641, 58 L.Ed. 1055. The Natural Gas Act shows clearly that it was the intention of Congress to give the Commission quasi-legislative power, i. e. regulatory power as to future rates; but there is no indication of any intention to clothe it with judicial or quasi-judicial powers with respect to past charges or practices, such as was vested in the Interstate Commerce Commission by section 9 of the Interstate Commerce Act. 49 U.S.C.A. § 9. As the Commission itself says, it was not given authority to fix rates for the past or to award reparations on account of past rates. If it was not given the power to fix past rates, or award reparations based upon their unreasonableness, it certainly was given no power to do the same thing indirectly by making findings of fáct as to past rates to be given effect in rate proceedings before state commissions. No intention on the part of Congress to vest any such unusual power in a commission ought to be indulged unless conferred in the plainest terms; and not only is it not plainly given here, but such power cannot be spelled out of the statutes on any theory of interpretation with which we are familiar."

In Mississippi Power & Light Co. v. Memphis Natural Gas Co., 5 Cir., 162 F.2d 388, certiorari denied 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355, Memphis Natural Gas Co. sought to recover against Mississippi Power Co. a balance claimed to be due for gas sold. The 1934 contract between the parties for the sale of gas contained a "favored nation" clause giving the distributor a right to a lower rate which the seller might give to any other purchaser of gas. Subsequent to the passage of the Natural Gas Act, in 1939 Memphis gave a lower rate to the City of Memphis, and Mississippi claimed to be entitled to that lower rate for the period 1939 to 1943 and filed a counterclaim for the amount it would

have saved, claiming that the failure of Memphis to file the lower rate entitled it to obtain by contractual recovery the advantage of the lower rate. The court held that the "favored nation" clause became inoperative after the passage of the Natural Gas Act and until the Commission changed the rate, the contract rate was the legal rate and the court was bound thereby. It held that the Commission, to which Mississippi had applied during the pendency of the suit to determine the just and reasonable rate during the period 1939 to 1943, was without jurisdiction to grant the requested relief since its power was limited to determine rates to be thereafter observed and in force. The court stated, 162 F.2d at page 390:

"* * * No matter how Mississippi may contort the effect of the 'favored nation' clause, the act places upon the 'gas distributing company,' here Mississippi, or the Commission itself the power of instituting a hearing to determine whether a rate is proper under the terms of the act. Under section 5 the Commission may consider discrimination and preference in setting a rate. Rate-making is a legislative function that the courts will not interfere with, at least until the Commission has exercised the function. To give effect to the 'favored nation' clause would operate to transfer the legislative function of rate-making from the Commission to the courts. For the court to place a contractual duty on Memphis to file a new rate schedule would be tantamount to forcing new rates on Memphis without permitting its recourse to the Commission."

It would appear that the Commission's lack of power to make findings as to reasonableness of past rates applies equally well to the situation here. Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912.

▮ This brings us to the second proposition that where rates for the transportation of natural gas are filed with the Federal Power Commission, they become the only lawful rates which the utility can charge or accept, and until changed by the Commission they are binding upon plaintiff and defendant alike and upon this court. Hope Natural Gas Co. v. Federal Power Commission, supra. Section 4 of the Natural Gas Act provides:

"Unless the Commission otherwise orders, no change shall be made by any natural-gas company in any such rate, charge, classification, or service, or in any rule, regulation, or contract relating thereto, except after thirty days' notice to the Commission and to the public." 15 U.S.C.A. § 717c(d).

The finding of the Federal Power Commission to the effect that defendant's rates 3–G and 4–G, since the dates of filing have remained continuously on file as its demanded rates for the common carrier transportation therein specified, and have not been changed, altered or cancelled, was affirmed in Montana-Dakota Utilities Co. v. Federal Power Commission, 8 Cir., 169 F.2d 392, 397, the court stating:

"The only means of altering, changing or cancelling a filed rate schedule is provided by the Provisional Rules of Practice and Regulations under the Natural Gas Act promulgated by the Commission and of which the Commission found that petitioner had actual notice.

* * * * * *

"* * * The petitioner did not cancel the filed rate schedules in the way provided by the regulations; and literally speaking it did not succeed in 'withdrawing' them from the files of the Commission. Technically, therefore, the finding is correct. Under these circumstances we are bound by the finding of the Commission; and we cannot hold that the Commission for this reason alone exceeded its powers in investigating and revising the rate schedules filed by petitioner."

It must therefore be assumed that the defendant had rates on file and that such rates, until changed in the manner provided by law, were the lawful rates, binding upon plaintiff and defendant alike. Texas & Pacific Ry. Co. v. Cisco Oil Mill, 204 U.S. 449, 27 S.Ct. 358, 51 L.Ed. 562; Northwest-

ern Public Service Co. v. Montana-Dakota Utilities Co., 8 Cir., 181 F.2d 19.

Accepting then, as we must, the propositions that defendant's rates on file are the lawful rates until changed by the Commission and that the Commission has power only to prescribe rates for the future and none to make findings as to the reasonableness of past rates, I wonder how the plaintiff can show damage save by showing that the Commission would have approved some rate structure and some practice other than that existing. Any "conjecture", "speculation", or "ascertainment" of the damage to plaintiff presents not only a question of difficulty of proof but necessarily depends upon the existence or establishment of a criterion, a reasonable rate. I consider apropos the words of Judge Byrne, United States District Court, Southern District of California, in an opinion rendered January 29, 1952, in Interstate Natural Gas Co. v. Southern California Gas Co., D.C., 102 F. Supp. 685. There plaintiff claimed damages alleged to have been suffered by virtue of defendant's refusal to transport gas which plaintiff desired to sell in interstate commerce, and which conduct was alleged to have been violative of the Leasing Act, the Natural Gas Act and the Sherman Anti-Trust Act. The court granted the motion to dismiss upon the ground that it had no jurisdiction over the subject-matter because primary administrative jurisdiction was in the Commission and plaintiff had failed to exhaust its administrative remedies. The court said [102 F.Supp. 688]:

"Here the plaintiff asserts that it complained to the defendants of their failure to file schedules and to transport its gas, but it did not complain to the Federal Power Commission. This court does not know that the Commission as the administrator of the Act, in the interest of public convenience and necessity, would have required the defendants to transport any of the plaintiff's gas. Pipelines do not have an unlimited capacity and the Act forbids a natural-gas company to abandon, without permission of the Commission, any portion of its facilities or any service rendered by means of such facilities. Section 717f(b). Whether and to what extent plaintiff should be permitted to use defendants' facilities, and what services then being rendered should be abandoned, is strictly an administrative question. And the administrative remedy is exclusive of any which may be afforded by courts, at least until the Commission has passed upon the validity of the practices and classifications involved. Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553; Robinson v. Baltimore & Ohio R. Co., 222 U.S. 506, 32 S.Ct. 114, 56 L.Ed. 288; Northern Pacific R. Co. v. Solum, 247 U.S. 477, 38 S.Ct. 550, 62 L.Ed. 1221; Director General of Railroads v. Viscose Co., 254 U.S. 498, 41 S.Ct. 151, 65 L.Ed. 372; Midland Valley R. Co. v. Barkley, 276 U.S. 482, 48 S.Ct. 342, 72 L.Ed. 664.

"Plaintiff seeks to avoid this rule of law enunciated repeatedly by the Supreme Court by its insistence that it asks relief, not from the unlawful practices that have been established as a result of the alleged conspiracy, but from the conspiracy itself, over which the Federal Power Commission is said to have no jurisdiction, and from which it can give no relief. This manoeuver, as a means of conferring jurisdiction on this court, is futile, for the reason that it cannot maintain its action without establishing injury. The injury can ensue only from the maintenance of the unlawful practices which are specially charged to be discriminatory. What practices are 'unjust, unreasonable, unduly discriminatory or preferential', 15 U.S.C.A. § 717d(a), is determined by the Federal Power Commission and not by the anti-trust laws. The Supreme Court has uniformly refused to permit a party under guise of suing under the anti-trust laws to seek in the courts, by indirection, determinations which are reserved for the Commission in the first instance. Keogh v. Chicago & Northwestern R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183; Central Transfer Co. v. Terminal Railroad Ass'n,

288 U.S. 469, 53 S.Ct. 444, 77 L.Ed. 899; Terminal Warehouse Co. v. Pennsylvania R. Co., 297 U.S. 500, 56 S.Ct. 546, 80 L.Ed. 827. As these cases show, the plaintiff cannot make its assault on a matter said not to be within the jurisdiction of the Commission, when adjudication must turn on matters which are within its jurisdiction. *The plaintiff cannot show damage save by showing that the Commission would approve some rate structure and some practice other than that presently existing.*

\* \* \* \* \* \*

"Absent a hearing and determination by the Commission as to the extent, if any, to which defendants should be required to make their facilities available to plaintiff, what measure of damages would this court apply? Can it be contended that this court should take evidence and determine what portion of defendants' facilities should have been made available to plaintiff and at what rates, or which of defendants' customers, contracts and services should have been eliminated to accommodate the plaintiff?"

█ In view of the prescription of the statute limiting the power of the Commission to prescribe rates to those to be thereafter observed, I submit that the same reasoning must be applied to deny recovery to one seeking damages suffered from a rate subsequently determined by the Commission to be unlawful. In other words, I do not believe that Judge Byrne's opinion can be construed to permit such an action even after such a determination has been secured from the Commission.

Judge Pray of the Billings Division, United States District Court of Montana, in an opinion filed November 1, 1951, in Mondakota Gas Co. v. Montana-Dakota Utilities Co., 103 F.Supp. 666, a case reportedly similar to that here, speaking with reference to plaintiff's failure to apply to the Secretary of the Interior for a determination of the proportionate amount of pipeline capacity it might utilize, stated:

"How could the plaintiff expect to establish his cause of action in a federal court if it failed to exhaust its administrative remedies and regulatory requirements to enable it to transact the business described in the complaint? Now the question is, does it appear from the law and authorities cited that such would constitute an indispensable prerequisite to the commencement of an action for judicial relief such as is contemplated by this action? What if no space were found in the pipe lines to satisfy plaintiff's demands, or that defendant be called upon to alter or cancel contracts with others to accommodate plaintiff? Plaintiff suggests that the duty rested upon defendant to make such application to the Secretary, which at least is a partial admission that such a step should have been taken, but the plaintiff knew his own plans and what accommodations would be required from defendant, which information was not available to defendant, consequently in the court's view the duty rested upon plaintiff, as the party chiefly interested, to find out what, if any, space would be available for its use in defendant's pipe lines.

"It appears also to be a fact, as asserted by defendant, that while plaintiff is a natural gas company, under its own statement, as defined in the Natural Gas Act, it 'has never applied for or obtained a certificate of public convenience and necessity under Section 7(c) of the Natural Gas Act. 15 U.S.C.A. § 717f(c), authorizing it to enter the market served by Montana-Dakota Utilities Company, or authorizing it to operate any facilities or to transport or ship natural gas to any customer.'

"It is contended that plaintiff never gave defendant information as to the nature of any proposed shipment of gas it wanted to make, or as to quantity or place of origin or destination, or any information as to the proposed maximum daily shipment it desired to make or any other necessary and pertinent facts concerning any gas shipments it was desirous of making, and that no gas was ever tendered defendant, Montana-Dakota Utilities Co., by plaintiff for shipment in any of the former's

pipe lines. Plaintiff claims it was unable to do business with defendant because of the alleged existence of unreasonable rates, which had never been tested by plaintiff. Plaintiff could have obtained a certificate of convenience and necessity and also the decision of the Secretary of the Interior as to amount of gas that could be accepted by the pipe line, and then could have made a test of the rates by offering gas for shipment; and, if as a result of the test, it should have determined that the rates were unreasonable, plaintiff could then have applied for an interim rate to continue during the extended period of rate litigation, and thereby could have continued shipments of gas during that period without interruption.

"The court is convinced from the arguments of counsel and authorities cited that the schedule of rates on file by defendant since 1938 were to be accepted as the regularly filed and lawful rates until they were superceded by the new rates that went into effect April 2nd, 1949; the defendant could not alter or change those rates under the statute, 15 U.S.C.A. 717c. It would seem that the Federal Power Commission had no authority to make findings as to the unreasonableness of past rates, and that its authority in this respect is limited solely to the determination of rates to be in force and to apply to future transactions."

Judge Pray reached the conclusion that plaintiff had failed to establish a cause of action. I, likewise, can only conclude that for the period subsequent to the enactment of the Natural Gas Act at least, the plaintiff has failed to state a cause of action. The opinion of Justice Jackson in Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912, handed down after the motion to dismiss was argued and ruled upon, confirms my conclusion in that respect. The suit in that case was based upon the Federal Power Act's requirement of reasonable electric utility rates, a provision almost identical to that of the Natural Gas Act. Compare 16 U.S.C.A. § 824d(a) and 15 U.S.

C.A. § 717c(a). Plaintiff alleged that by fraudulent abuse of the interlocking directorship between plaintiff's predecessor and defendant companies its predecessor was deprived of its independence and power to resort to its administrative remedy and sought, after separation of their management, to recoup losses alleged to have resulted from its predecessor paying defendant unreasonably high charges for what defendant furnished and receiving unreasonably low rates for what it furnished defendant. Justice Jackson there said [341 U.S. 246, 71 S.Ct. 695]:

"But the problem is whether it is open to the courts to determine what the reasonable rates during the past should have been. The petitioner, in contending that they are so empowered, and the District Court, in undertaking to exercise that power, both regard reasonableness as a justiciable legal right rather than a criterion for administrative application in determining a lawful rate. Statutory reasonableness is an abstract quality represented by an area rather than a pinpoint. It allows a substantial spread between what is unreasonable because too low and what is unreasonable because too high. * * It is not the disembodied 'reasonableness' but that standard when embodied in a rate which the Commission accepts or determines that governs the rights of buyer and seller. A court may think a different level more reasonable. But the prescription of the statute is a standard for the Commission to apply and, independently of Commission action, creates no right which courts may enforce."

The court then went on to hold that the right to a reasonable rate is the right to the rate which the Commission files or fixes and that the court could assume no right to a different one, except upon review of the Commission's order.

Then, answering the contention that plaintiff here makes, to the effect that it has secured a determination by the Commission that the rate was unlawful, the Supreme Court in the Northwestern case agreed that the judgment rendered by the District Court could not stand, but disagreed

as to whether the District Court should dismiss the complaint as the majority felt was proper, or whether as the minority urged, it should refer the issues to the Federal Power Commission, and said:

"* * * In no instance have we directed a court to retain a case in which it could not determine a single one of its vital issues. Here the issue of the reasonableness of the charges is not one clearly severable from the issues of liability; for the acts charged do not amount to fraud unless there has been an unreasonable charge. Injury is an essential element of remediable fraud. * * *

"If the court is presented with a case it can decide but some issue is within the competence of an administrative body, in an independent proceeding, to decide, comity and avoidance of conflict as well as other considerations make it proper to refer that issue. But we know of no case where the court has ordered reference of an issue which the administrative body would not itself have jurisdiction to determine in a proceeding for that purpose. The fact that the Congress withheld from the Commission power to grant reparations does not require courts to entertain proceedings they cannot themselves decide in order indirectly to obtain Commission action which Congress did not allow to be taken directly. There is no indication in the Power Act that was Congress' intent.

"It is urged that this leaves petitioner without a remedy under the Power Act. We agree. * * *"

My only conclusion is that plaintiff here is in no better position for having secured the Commission's determination that defendant's rates are unlawful, and that the attempt to characterize the suit as an antitrust action does not surmount or avoid the difficulties heretofore pointed out. Keogh v. Chicago & N. W. Ry. Co., 260 U. S. 156, 43 S.Ct. 47, 67 L.Ed. 183; Interstate Natural Gas Co. v. Southern California Gas Co., supra.

■ There is yet another stone in plaintiff's path and that is its failure to have secured a determination from the Secretary of the Interior as to the proportionate amount of its gas defendant should be required to transport. Section 28 of the Leasing Act, as amended August 21, 1935, provides:

"Rights-of-way through the public lands * * * may be granted by the Secretary of the Interior for pipe-line purposes for the transportation of oil or natural gas * * * and upon the express condition that such pipe lines shall be constructed, operated, and maintained as common carriers and shall accept, convey, transport, or purchase without discrimination, oil or natural gas produced from Government lands in the vicinity of the pipe line *in such proportionate amounts as the Secretary of the Interior may*, after a full hearing with due notice thereof to the interested parties and a proper finding of facts, *determine to be reasonable*: * * *." 30 U.S.C.A. § 185. (Italics supplied.)

Plaintiff John Wight admits that no application was ever made by Capital Gas under the above section for a determination of the proportionate space in the pipe line it might utilize. See Volume II, Deposition John Wight, page 321. He asserts that Montana Eastern made written demands upon defendant to transport gas but that the only demands made by Capital were oral. Deposition John Wight, Volume I, pages 188–189. Plaintiff contends that such a gesture would have been useless in view of the unreasonable rate and cites the decision of the Power Commission and the subsequent affirmance by the Court of Appeals to the effect that pending determination of the reasonableness of defendant's rates plaintiff would not be in a position to determine whether it can successfully engage in the business and consequently whether it desires to apply for authority to transport and sell natural gas in interstate commerce under Section 7 of the Natural Gas Act. 15 U.S.C.A. § 717f. However, that conclusion was reached by the Commission with respect to the question whether plaintiff, not presently a gas distributing company, was a competent party to test the reasonableness

of rates before the Power Commission. It connotes no authority to maintain an action for damages allegedly resulting from the violation of the very law with which plaintiff itself has not complied, the compliance with which would seem to this court to be an indispensable prerequisite to its ability to prove damages. Such failure presents not a question whether damages can be measured with exactness and precision, for that would not defeat right to recovery, but rather makes impossible the ascertainment of any damage.

■ The same reasoning holds true with reference to plaintiff's failure to obtain a certificate of public convenience and necessity as required by Section 7(c) of the Act. 15 U.S.C.A. § 717f(c); Mondakota Gas Co. v. Montana-Dakota Utilities Co., opinion by Judge Pray, supra. Wight admits no such certificate was obtained. Deposition John Wight, Volume II, page 319.

It appears then that for the period subsequent to the enactment of the Natural Gas Act plaintiff has stated no cause of action, and that, having failed to secure a determination in accordance with the provisions of Section 28 of the Leasing Act and a certificate of convenience as required by the Natural Gas Act, is barred from the relief sought here. Assuming the existence of an unreasonable rate, at first blush it may appear harsh to require plaintiff to pursue what he deems to be a futile gesture. However, when viewed in the light of the fact that plaintiff is vested with no absolute right to the use of defendant's pipe line but only such right as the Secretary of the Interior, after full hearing, shall determine is reasonable, it appears that plaintiff has failed to establish the only bases upon which an action for damages can rest. The right to damages here depended upon the solution of issues whose determination is, by statute, committed to an administrative body and neither this court nor a jury can pretend to make such a determination. The circumstance that plaintiff felt it a futile gesture because of the unreasonableness of the rate did not liberate it from the obligation to pursue its administrative remedies before appealing to the courts. Had application for an allocation of space been made,

judicial coercion could not have controlled the exercise of discretion by the Secretary of the Interior. United States ex rel. Jordon v. Ickes, 79 U.S.App.D.C. 114, 143 F.2d 152, and cases cited therein. Surely the court cannot now, years later, second-guess how that discretion would have been exercised.

■ I am also of the opinion that the statute of limitations bars plaintiff from any relief. Viewing the case in the light of the Northwestern Public Service case, 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912, it is difficult to determine what this court can now do for plaintiff that could not have been done at any time subsequent to any loss to plaintiff. The complaint alleges that the losses occurred during the period between January 1, 1930 and January 1, 1940, and the present action was commenced on October 25, 1950, approximately ten years after the end of that period. Capital Gas admittedly lost all of its assets in 1931 or 1932 except the Anderson and Oler permits and has been "broke" since the middle thirties. John Wight Deposition, Volume I, page 172.

Plaintiff's argument that the statute of limitations was tolled by the proceedings brought by the Mondakota Development Company on December 7, 1941, before the Federal Power Commission, must necessarily fall before the fact that there was nothing the Commission could or did do to affect any action the plaintiff might desire to assert for damages suffered in the past. The pendency of a suit, on the outcome of which nothing here can depend, cannot have the effect of tolling the statute. Plaintiff alleges and argues vigorously that the restraint exercised by defendant was full and complete up until April 2, 1949, but in their depositions Wight and McClellan, the trustee in bankruptcy, state that they felt no hesitancy or restraint against asserting any claim they felt they might have against the defendant. See Deposition John Wight, Volume II, pages 264 to 274; Deposition McClellan, page 8. In fact several such actions were begun, both by plaintiff and by Montana Eastern Pipe Line Co., a company dominated by John Wight and operated by him as a single operation with Capital

56

Gas: Deposition John Wight 238–241. In 1933 Montana Eastern commenced a suit against defendant in the Federal Court of Montana to recover damages allegedly arising out of defendant's refusal to transport gas at a reasonable rate. The action resulted in a finding that its rates were reasonable. The case was appealed by Montana Eastern, but upon motion by appellee for dismissal of the appeal for failure of appellant to file a brief within the time required, the Circuit Court ordered that a decree of dismissal be entered and filed, without prejudice to appellant to move within thirty days to reinstate the appeal. Montana Eastern Pipe Line Co. v. Montana-Dakota Utilities Co., 9 Cir., 104 F.2d 1016. Nothing appears to indicate that the appeal was ever reinstated. A second action was instituted by Montana Eastern in this court some time in 1933 and was subsequently dismissed in 1937 by consent. Montana-Eastern v. Montana-Dakota Utilities Co., et al.,[1] D.C.Minn., Civil 3288. Plaintiff herein began a similar action in the same Montana court on February 4, 1934. This action was subsequently dismissed, as plaintiff claims, pursuant to a stipulation entered into in 1934 following an agreement by defendant to purchase whatever gas plaintiff had; but as defendant claims, in 1939 for failure to prosecute.

 Attention is called to these suits to negative the existence of any restraint upon plaintiff. Had plaintiff been denied access to the courts, no doubt the statute would have been tolled, but no facts showing disability, privilege, mistake, waiver, trust, ignorance, fraud or concealment have been asserted to support its claim that defendant cannot avail itself of the defense of the statute. The only duress appearing lies in the affidavit of John Wight wherein he states, on information and belief, that defendant induced creditors of plaintiff to threaten plaintiff with receivership or bankruptcy if it did not dismiss a petition then pending before the Federal Power Commission and enter into a release agreement and gas purchase contracts. In determining whether there was a genuine issue of material fact, statements based upon in-

formation and belief in the affidavit opposing the motion for summary judgment cannot be considered. Dewey v. Clark, 86 U.S. App.D.C. 137, 180 F.2d 766. Plaintiff cannot take the arbitrary position, as it has done here, that because of the complicated nature of the case or the difficulty of showing facts, that it will simply deny those submitted by defendant and offer none of its own. Piantadosi v. Loews, Inc., 9 Cir., 137 F.2d 534. Mere formal denials or general allegations which do not show facts in detail cannot defeat summary judgment. Engl v. Aetna Life Insurance Co., 2 Cir., 139 F.2d 469.

 To avoid the bar of the statute of limitations all plaintiff has done is to allege that defendant is estopped from asserting this defense because of its unlawful conduct in refusing to transport gas at a reasonable rate. The hypothesis that the statute does not run against a cause of action based upon the anti-trust act, for that is what plaintiff's position amounts to, is unacceptable for it has been repeatedly held that a cause of action arises under the anti-trust act when damage is sustained and it is then that the statute begins to run. Burnham Chemical Co. v. Borax Consolidated, 9 Cir., 170 F.2d 569; Suckow Borax Mines Consol. v. Borax Consolidated, 9 Cir., 185 F.2d 196; Momand v. Universal Film Exchange, 1 Cir., 172 F.2d 37.

The record here induces the conviction that whatever cause of action the plaintiff may have had was barred long before this action was begun, and this is true whether the Minnesota Statute of six years, or the Montana Statute of two years, be deemed applicable. Therefore the motion of the defendant is granted and the action dismissed upon the ground that for the period subsequent to the enactment of the Natural Gas Act plaintiff has failed to state a cause of action, and for the added reason that for the period prior thereto plaintiff has failed both to exhaust its remedies before the proper administrative tribunals and to assert its cause within the allowable period of the statute of limitations.

Exceptions to the ruling of the court are allowed.

1. No opinion for publication.