## MIDLAND VALLEY RAILROAD COMPANY *v.* BARKLEY ET AL.

### CERTIORARI TO THE SUPREME COURT OF ARKANSAS.

No. 375. Argued March 9, 1928.—Decided April 9, 1928.

A railroad, in a time of coal-car shortage, distributed open-top cars to tipple mines, which can use only that type, and box cars to wagon mines. The owner of a wagon mine, shipping interstate, refused box cars and, relying on § 22 of the Interstate Commerce Act, sued the railroad in the state court for breach of its duty to furnish cars under the local law. *Held* that the action would not lie, since the question at issue was the reasonableness of the carrier's practice of car distribution, which was an administrative question for the Interstate Commerce Commission. P. 484.

172 Ark. 898, reversed.

CERTIORARI, 275 U. S. 514, to a judgment of the Supreme Court of Arkansas, which affirmed a recovery in an action against the railroad for failure to furnish coal cars.

Mr. *Thomas B. Pryor,* with whom Messrs. *O. E. Swan* and *Vincent M. Miles* were on the brief, for petitioner.

Mr. *Charles I. Evans,* with whom Messrs. *U. C. May* and *Jeptha H. Evans* were on the brief, for respondents.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

Barkley and Burnett operated a wagon coal mine in Arkansas located about a quarter of a mile from the line of the Midland Valley Railroad, a corporation of that State. They shipped their coal by that carrier, largely in interstate commerce. In the spring and summer of 1922 there was a widespread strike in bituminous coal mines throughout the United States. When mining was resumed in August, an acute car shortage developed. Coal is usually shipped in open top cars; and tipple mines, which are the largest producers of coal, can use only cars of that type. The supply of these being inadequate, the Midland, like other carriers, distributed the available open top cars among the tipple mines and its box cars among the wagon mines. Barkley and Burnett refused to accept box cars; and later brought, in an Arkansas court, this action against the Midland to recover damages for the alleged failure to furnish, during the period of the car shortage, an adequate supply of cars. By appropriate proceedings, the defendant objected to the maintenance of the action in the state court. It contended that the proper distribution of coal cars by interstate carriers in time of car shortage was an administrative question which Congress had committed to the Interstate Commerce Commission; and that the plaintiffs should have sought relief by application to that board. The trial court overruled the objection; the plaintiffs got a verdict; the judgment entered thereon was affirmed by the highest court of the State, 172 Ark. 898; and this Court granted a writ of certiorari. 275 U. S. 514. The only question for decision is whether the action lies.

The plaintiffs contend, and the state court held, that the action lay because it was brought to enforce the common law duty of the carrier to furnish cars, *Midland Valley*

*R. R. Co.* v. *Hoffman Coal Co.,* 91 Ark. 180, 189,—a duty confirmed by the statutes of the State (Crawford & Moses Arkansas Digest, 1921, § 895), and recognized by the Interstate Commerce Act. They argue that the right to bring an action in the courts of a State for a breach of that duty has been specifically preserved to the shipper by § 22 of the Interstate Commerce Act which declares that " nothing in this Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies"; that the plaintiffs made no attack, open or covert, upon any regulation or order of the Commission relating to the supply or distribution of cars, compare *Lambert Coal Co.* v. *Baltimore & Ohio R. R. Co.,* 258 U. S. 377; that consequently no administrative question was involved, compare *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426; *Loomis* v. *Lehigh Valley R. R. Co.,* 240 U. S. 43; *Great Northern Ry. Co.* v. *Merchants Elevator Co.,* 259 U. S. 285; and that the case is governed by *Pennsylvania R. R. Co.* v. *Puritan Coal Co.,* 237 U. S. 121, and *Pennsylvania R. R. Co.* v. *Sonman Shaft Coal Co.,* 242 U. S. 120, rather than by *Baltimore & Ohio R. R. Co.* v. *Pitcairn Coal Co.,* 215 U. S. 481, and *Morrisdale Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 304.

The assertion that no administrative question is here involved rests upon a misapprehension. It may be assumed that there was no order of the Commission which required the Midland to distribute all available open top cars among the tipple mines. But the reasonableness of the Midland's practice in doing so, and in allotting box cars to the wagon mines, was the substantial matter in controversy. The right of a shipper to cars is not an absolute right and the carrier is not liable if its failure to furnish cars was the result of sudden and great demands which it

had no reason to apprehend would be made and which it could not reasonably have been expected to meet in full. The law exacts only what is reasonable from such carriers. The reasonableness of the rule adopted by the carrier is a matter for the Commission. *Pennsylvania R. R. Co.* v. *Puritan Coal Co.*, 237 U. S. 121, 133, 134. In the case at bar, the right of the plaintiffs to recover depended upon whether the defendant's practice of distributing its open top cars to tipple mines and its box cars to wagon mines was reasonable. The practice is one which was generally adopted in times of car shortage by rail carriers in the same territory; which had, under like circumstances, been prescribed by general orders of the Director General;[1] which had been to some extent prescribed by the Interstate Commerce Commission;[2] and the propriety of which in individual cases has been repeatedly the subject of consideration by the Commission on applications by shippers for relief.[3] It was clearly one of those questions which, as recognized in the *Puritan* case, calls for " the

---

[1] By an order dated June 17, 1918, the Regional Directors were instructed that " open top cars suitable and available for loading at tipple mines should be first supplied to such mines and should not be supplied to wagon mines until the tipple mines have been supplied." This modified an earlier order of March 20, 1918, which had directed that open top cars should not be furnished to wagon mines for loading on public team tracks if box cars were available for such loading.

[2] By notice of March 2, 1920, the Commission recommended that the rules as to the distribution of coal cars embodied in Railroad Administration Car Service Section Circular CS–31, issued September 12, 1918, revised December 23, 1919, be continued in effect. See *In re Rules Governing Ratings of Coal Mines*, 95 I. C. C. 309, 320. This recommendation appears to have been generally accepted by the carriers. Compare *Winding Gulf Colliery Co.* v. *Virginian Ry. Co.*, 102 I. C. C. 41. From time to time the Commission has issued emergency orders governing the distribution of coal cars, under the power conferred by paragraph 15 of § 402 of Transportation Act, 1920, c. 91,

exercise of the regulating function of the Commission."
p. 133. Compare *Robinson* v. *Baltimore & Ohio R. R. Co.,*
222 U. S. 506.

In the case at bar, the adequacy of the carrier's supply
of open cars in normal times was not seriously questioned;
there was no suggestion that the plaintiffs' mine had been
discriminated against; and the only substantial complaint
was that the Midland's practice in allotting the open top
cars to the tipple mines was illegal. Thus the facts are
unlike those in which actions at law for failure to furnish
cars have been entertained. In *Pennsylvania R. R. Co.* v.
*Puritan Coal Co.,* 237 U. S. 121, and in *Illinois Central R.
R. Co.* v. *Mulberry Hill Coal Co.,* 238 U. S. 275, the claim
was that, under a rule confessedly valid, the carrier had
discriminated against the plaintiff. In *Eastern Railway*

41 Stat. 456, 476. Several of these orders recognize the necessity of
a distinction, in time of shortage, between wagon and tipple mines.
By Service Order No. 14, issued August 25, 1920, the Commission
directed that on any day when a carrier was unable to supply all
mines on its line with the required open top cars, such cars should not
be furnished to wagon mines which were unable to load on private
tracks and from a tipple or like arrangement, until all tipple mines
had been supplied. This was rescinded by Service Order No. 17,
effective September 19, 1920, which, however, prohibited a carrier
from furnishing open top cars in time of shortage to mines which did
not customarily load cars within 24 hours of the time of placement,
a prohibition which would include most wagon load mines. This
order was vacated March 6, 1921. A similar requirement was incor-
porated into Service Order No. 25 by Amendment No. 1, effective
October 17, 1922. Service Order No. 25 applied only to common car-
riers " east of the Mississippi River, including the west bank crossings
thereof "; it was vacated December 11, 1922.

[3] *Thompson* v. *Pennsylvania R. R. Co.,* 10 I. C. C. 640; *Swaney* v.
*Baltimore & Ohio R. R. Co.,* 49 I. C .C. 345. Compare *Glade Coal
Co.* v. *Baltimore & Ohio R. R. Co.,* 10 I. C. C. 226; *Northern Coal
Co.* v. *Mobile & Ohio R. R. Co.,* 55 I. C. C. 502; *Griffith* v. *Jennings,*
60 I. C. C. 232; *Dickinson Fuel Co.* v. *Chesapeake & Ohio Ry. Co.,*
60 I. C. C. 315.

*Co.* v. *Littlefield,* 237 U. S. 140, the claim was that the carrier, knowing of the car shortage, had not only failed to notify the shipper but had accepted the shipment. In *Pennsylvania R. R. Co.* v. *Sonman Shaft Coal Co.,* 242 U. S. 120, 125–127, the action was for failure to supply cars in confessedly normal times. Compare *Pennsylvania R. R. Co.* v. *Stineman Coal Co.,* 242 U. S. 298, 300–301. In none of those cases was the reasonableness of the carrier's practice in controversy.

We have no occasion to consider whether the then existing orders of the Commission required the Midland to adopt the practice followed. Nor need we determine, whether by the amendments of the Interstate Commerce Act made in Transportation Act, 1920, c. 91, § 402, pars: 10–17, 41 Stat. 456, 476, and the Act of September 22, 1922, c. 413, 42 Stat. 1025, Congress evinced the intention to occupy the field of regulating the distribution of coal cars, and thereby abrogated the preëxisting limited right to sue in a state court for failure to supply cars.

*Reversed.*