BROWNSVILLE NAV. DIST. OF CAMERON COUNTY, TEX., et al. v. ST. LOUIS, B. & M. RY. CO. et al. *

No. 8420.

Circuit Court of Appeals, Fifth Circuit.

July 15, 1937.

---

[3] Thompson v. Schmitt, 115 Tex. 53, 274 S.W. 554; Burk-Waggoner Ass'n v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183.

*Writ of certiorari granted 58 S.Ct. 42, 82 L.Ed. ——.

A. L. Reed, of Dallas, Tex., and A. B. Cole, of Brownsville, Tex., for appellants.

R. H. Kelley and J. H. Tallichet, both of Houston, Tex., and E. H. Crenshaw, Jr., of Kingsville, Tex., for appellees.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

The appellants are the Brownsville Navigation District of Cameron County, Texas, duly incorporated under the laws of Texas [1] (hereinafter referred to as the Port of Brownsville); F. A. Lallier, engaged in the stevedore, freight brokerage, and forwarding business; and J. G. Philen, Jr., sole owner and operator of two

---

[1] Chapter 192, House Bill 724, 41st Leg. Regular Session (1929), and chapter

3, Senate Bill 29, 42d Leg. Regular Session of the Special Laws of Texas (1931).

companies engaged in the same business as Lallier. The appellees are Guy A. Thompson, trustee in bankruptcy of the St. Louis, Brownsville & Mexico Railway Company, a Texas corporation, now being operated by said trustee, in proceedings for reorganization of said corporation, who is sued by consent of court (hereinafter referred to as the Missouri Pacific); and the Port Isabel & Rio Grande Valley Railroad Company, a Texas corporation (hereinafter called the Rio Grande). The jurisdiction of the court arises out of the Interstate Commerce Act, as amended, and carrier rules, rates, regulations, and practices thereunder.

The petition charges that appellees have unlawfully failed and refused to furnish railroad cars for the transportation of interstate shipments when reasonably requested so to do by appellants. The facts, set forth in great detail in the petition, were met by a motion to dismiss for want of jurisdiction, which was sustained by the court on the ground that the matter involved was one for the administrative powers of the Interstate Commerce Commission.

The Port of Brownsville caused a ship channel, seventeen miles in length, to be dredged from Brazos Santiago Pass, on the Gulf of Mexico, inland to a point approximately five miles from the geographical center of the city of Brownsville. It is a modern ship channel of a depth and width sufficient for seagoing vessels of a type usually calling at ports on the Gulf of Mexico from New Orleans to Brownsville. The Rio Grande operates a line of railway, approximately twenty-six miles in length, between said city and Port Isabel in Cameron county, Tex., and is the only railway that has switching connections with the facilities of the turning basin at said port. It connects in the city of Brownsville with the Missouri Pacific lines.

In order to move traffic from said turning basin to uptown Brownsville and to a connection with the railways of Mexico serving Matamoros, it is necessary to use the joint service of both the Rio Grande and the Missouri Pacific. It has been customary for the Missouri Pacific and other carriers to furnish cars (box, flat, and gondola) to the Rio Grande for the purpose of moving traffic originating on, or consigned to locations on, the latter's line of railway, at an agreed rental of $1 per day, being the uniformly accepted charge for the use of rented cars.

The appellees have published, and have on file with the Interstate Commerce Commission, tariffs applicable to the proposed traffic, but have recently refused to furnish cars for freight moving through the Port of Brownsville. The Missouri Pacific obtains a longer haul of the same traffic when it moves through other ports. Both carriers are members of the American Railway Association, and are subscribers to an agreement which provides for an interchange of cars under a code of rules adopted by the association, the general principle of which is that payment shall be made to the car owner for each day the car is off of the owner's lines. Cf. Chicago, Rock Island & Pacific Railway Co. v. United States, 284 U.S. 80, 52 S.Ct. 87, 76 L.Ed. 177.

The Missouri Pacific, under duly published tariffs, is furnishing transportation equipment for all commodities from the ports of Corpus Christi and Houston to various gateways for interchange with the National Railways of Mexico for transportation into Mexico, but refuses to apply its duly filed tariff rates and rules to commodities moving through the Port of Brownsville.

It is specifically alleged in the petition that, subsequent to May 16, 1936, the Missouri Pacific refused, and is now refusing, to furnish the necessary cars, and that the Rio Grande, in accordance with instructions of the Missouri Pacific, is refusing to permit shippers to load cars that are made empty at the docks of the turning basin; and that it specifically refused transportation of cars that had been loaded at the turning basin. The only apparent reason for appellee's conduct with reference to the Port of Brownsville is that the Missouri Pacific system will secure a longer haul if the traffic passes into and out of Mexico through other gateways.

■ The sole question presented on this appeal is the jurisdiction of the District Court to issue a writ of mandamus requiring appellees to perform their transportation duties under rates published and filed with the Interstate Commerce Commission. Two of the appellants are shippers' agents, handling freight at the Port of Brownsville for transportation by rail and water to and from the United States of America and the Republic of Mexico. Upon the undisputed facts, these two appellants, as agents of the shippers, tendered freight to the appellees, who failed to transport

it; they made request for railroad cars for use in interstate commerce and were denied them. They stand in the same position as their principals, and are held to be persons within the meaning of the statute. When a carrier is tendered goods for transportation, it is immaterial that the shipper is not the real owner of the goods. Interstate Commerce Commission v. Delaware, L. & W. R. Co., 220 U.S. 235, 31 S.Ct. 392, 55 L.Ed. 448; Lehigh Valley Ry. Co. v. United States, 243 U.S. 444, 37 S.Ct. 434, 61 L.Ed. 839; Merchants' Warehouse Co. v. United States, 283 U.S. 501, 51 S.Ct. 505, 75 L.Ed. 1227.

As to the remedy: The petition for mandamus is based upon the Interstate Commerce Act, as amended. 49 U.S.C.A. § 49. It gives the District Court jurisdiction in an unusual degree to issue the writ against an interstate carrier commanding it "to move and transport the traffic, or to furnish cars or other facilities for transportaton for the party applying for the writ." It declares that the remedy given shall be cumulative and shall not exclude or interfere with other remedies provided by the statute. Macon, D. & S. R. Co. v. General Reduction Co. (C.C.A.) 44 F.(2d) 499.

■ As to the right: Under the Transportation Act of February 28, 1920 (c. 91, § 402, 41 Stat. 476, 49 U.S.C.A. § 1, par. 11), as well as at common law, it is the duty of a common carrier by railroad to furnish the shipper upon reasonable request with necessary cars as an essential step in the intended movement of the property to be shipped. Ordinarily, a shipper is entitled to as many cars as are needed, but this is not an absolute right. As at common law the carrier was not liable for failure to transport, if his coach were full, the law today exacts only what is reasonable from carriers who transport freight in railroad cars.

■ Legal defenses may be interposed to an action for damages or a petition for mandamus based upon the refusal of the carrier to furnish cars, but the fact that the defendant has a legal excuse does not deprive the court of jurisdiction to hear and decide the issues upon the law and the facts. The appellees are sued jointly, but may make joint or several defenses, as they deem proper. Likewise, the court may enter its judgment for or against one or more of the parties, as law and justice may require. The District Court is not deprived of jurisdiction to grant the writ of mandamus merely because the appellants, or some of them, might have prosecuted an action at law for damages or might have sought reparation or other administrative relief before the Interstate Commerce Commission.

■ There are two forms of discrimination under the Transportation Act: One in the rule, rate, or practice, the other in its application or enforcement; one in promulgating an unreasonable and prejudicial rule, rate, or practice, the other in unfairly and prejudicially enforcing a fair and nondiscriminational rule, rate, or practice. In a suit where the published rule, rate, or practice itself is attacked as unfair and unreasonably prejudicial, an issue is presented which calls for the exercise of the administrative power of the Interstate Commerce Commission, but, if the carrier's rule, rate, or practice, as promulgated and filed, is fair and reasonable on its face, and has been unfairly applied or enforced so as to discriminate unreasonably and prejudicially against the shipper, there is no administrative question involved, but a mere judicial question of fact as to whether the carrier has violated the rule to the plaintiff's damage. "Such suits," the court held in Pennsylvania R. R. Co. v. Puritan Coal Company, 237 U.S. 121, 35 S.Ct. 484, 488, 59 L.Ed. 867, "though against an interstate carrier for damages arising in interstate commerce, may be prosecuted either in the state or Federal courts." The opinion also differentiates the case of Morrisdale Coal Co. v. Pennsylvania Railroad Co., 230 U.S. 304, 33 S. Ct. 938, 57 L.Ed. 1494, where the reasonableness of the rule was a matter for the Commission, because the plaintiff admitted that it had received all the cars to which it was entitled under the carrier's rule.

■ It is true that the carriers in this case have published no joint through rate, but it is admitted that they are connecting carriers; that the commerce which appellants seek to have transported over appellees' joint lines is a through movement between the Port of Brownsville and the interchange with the National Railways of Mexico; and that both of the appellees have promulgated and filed with the Commission tariffs naming per car charges for such through transportation. Therefore, there is a through route composed of the two lines of railway; there is a through rate composed of two separately published

tariff factors; and there is joint responsibility for the through transportation. Atlantic Coast Line Railway Co. v. Smith Bros. (C.C.A.) 63 F.(2d) 747, certiorari denied Texas & P. Ry. Co. v. Smith Bros., 289 U.S. 761, 53 S.Ct. 795, 77 L.Ed. 1504.

The law specifically defines through rates, and adds (section 6, par. 1 [49 U.S. C.A. § 6 (1)]): "If no joint rate over the through route has been established, the several carriers in such through route shall file, print and keep open to public inspection as aforesaid, the separately established rates, fares, and charges applied to the through transportation." Referring specifically to this section, in Kansas City Southern Ry. Co. v. Albers Commission Co., 223 U.S. 573, 32 S.Ct. 316, 323, 56 L. Ed. 556, the court said: "In every substantial sense local rates and joint through rates were placed on the same level." In United States v. Illinois Central R. R. Co., 263 U.S. 515, 44 S.Ct. 189, 194, 68 L.Ed. 417, the court pointed out that the distinction between a joint and combination rate is without legal significance, and said: "A through route was established; and the transportation is performed as the result of this arrangement * * * express or implied."

The Interstate Commerce Act does not require a joint through rate on each route, but, "where no joint rate is specified, the tariffs for the through routes commonly provide that the through rate shall be the sum of the local rates of the several carriers contributing to the movement." Brown & Sons Lumber Co. v. Louisville & N. R. Co. (Jan. 4, 1937) 299 U.S. 393, 57 S.Ct. 265, 266, 81 L.Ed. 301. In this recent case, the court, upon the authority of Great Northern Ry. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943, upheld the carrier's construction of its published rule, notwithstanding the Commission, by reparation order, had sustained the shipper's claim. If the law is what the courts do, even more than what they say, this is an authority in two aspects for the doctrine that the construction and enforcement of nontechnical, unambiguous railroad tariffs present a question of law for judicial determination.

The appellants are not here assailing any published rule, rate, or practice. They have requested transportation facilities to be furnished under the regular tariffs on file with the Interstate Commerce Commission. The relief sought is an order commanding the carriers to furnish cars and transport traffic. There is no car shortage and no emergency which renders the carriers unable to comply with such an order. There is no plea that the appellees cannot rent or otherwise obtain the necessary equipment. There is no request or necessity for an order requiring the Missouri Pacific to send its equipment to foreign soil. There is no necessity for an administrative order requiring the carriers to establish a through route, which is merely "an arrangement, express or implied, between connecting railroads for the continuous carriage of goods from the originating pont on the line of one carrier to destination on the line of another."[2] A through route is already established; through carriage implies a through rate, and it does not admit of dispute that adequate car service is the only requisite to rail transportation sought by appellants at this time.

The District Court has jurisdiction to grant the petition for mandamus, and the fact, if it be a fact, that the petition discloses unreasonable and prejudicial discrimination by any carrier against the Port of Brownsville, is not sufficient to defeat jurisdiction to issue the writ. Such discriminational practice may be a proper subject for investigation and determination by the Commission under the amendment of August 12, 1935 (49 Stat. 607, c. 509, 49 U.S.C.A. § 3 (1), but no such administrative relief is sought in this cumulative proceeding, which is solely for judicial relief by writ of mandamus for the alleged failure of the carriers to perform their transportation duties to furnish cars in accordance with the published tariffs, and to desist from an unfair and discriminational enforcement of fair and reasonable published tariffs, regulations, and transportation agreements with respect to car service. The case should be heard and decided on the merits, notwithstanding any cumulative remedies of a judicial or administrative nature which may be available to appellants.

The judgment dismissing the petition is reversed, and the cause remanded for fur-

---

[2] St. Louis South Western Ry. Co. v. United States, 245 U.S. 136, 139, 38 S. Ct. 49, 62 L.Ed. 199, note 2.

ther proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

If I could agree with my associates that "the sole question presented on this appeal is the jurisdiction of the District Court to issue a writ of mandamus requiring appellees to perform their transportation duties under rates published and filed with the Interstate Commerce Commission," I should be bound to agree with them that the District Judge should have taken jurisdiction, and, going further, to hold that the mandamus should have been granted. No one questions or could question that the District Courts of the United States are given such jurisdiction by statute.

As I read the record, the question presented on this appeal is an entirely different one. It is whether, under the circumstances disclosed by the petition, the answer, and the proofs taken on the motion to dismiss for want of jurisdiction, the relief sought is administrative in its nature, and to be granted by the Commission, or judicial in its nature, and to be granted by the court.

I read the record as the District Judge did. To me it seems quite plain that what is in question here is not the performance of an established legal duty to carry tendered freight for an established legal charge, as in Macon, D. & S. R. Co. v. General Reduction Co. (C.C.A.) 44 F.(2d) 499; nor the refusal by the line on which the freight originates to perform its obligatory duty to furnish cars, if it has them available. Huerfano Coal Co. v. Colorado & S. E. Ry., 28 I.C.C. 502; Campbell River Creek Coal Co. v. A. A. R. R. Co., 33 I.C.C. 558, 562; Ft. Worth & Denver City Ry. Co. v. Strickland (Tex.Civ.App.) 208 S.W. 410; Atchison, Topeka & Santa Fe R. Co. v. Smyth (Tex.Civ.App.) 189 S.W. 70. What is in question here is the matter of car service and car distribution, and of the establishment of rules and practices in regard to it as applicable to a port in a case where the originating railroad has no cars available, there is no through rate, and the connecting line declines, because of traffic conditions which seem to it reasonable and proper, to furnish cars to be carried into Mexico where it gets only a small switching haul.

Boiled down, this is all that can be made of the case plaintiffs bring. Much is said in general terms of the injury to the district and to the plaintiffs' brokers and forwarders, through discriminative practices in favor of Laredo and Corpus Christi, indulged in by the trustee's lines. Much is said of shipments lost, of freight diverted, and, generally, of plans frustrated and hopes denied. There is, too, some definite specification of particular refusals of shipments, of particular actions with reference to railroad cars, tending to support the claim that, in refusing to furnish cars to the Port Isabel line for the switching movements in question, the trustee is determined, consistent, and resolute.

But this evidence was not needed, for he admits, indeed insists, that he has not furnished, and does not intend to furnish, cars for this movement. He denies that there is any law or regulation which compels him to, and insists that it is not discrimination to furnish cars for Mexican shipments where his road gets a line haul, and to refuse to furnish them where it gets only a meager switching charge. It is admitted by the Port Isabel Railroad Company that it will not, and cannot, furnish the cars demanded, not because it is averse to doing so, but because it has none, and can get none unless the trustee will furnish them, or it can obtain funds to buy them. It avers that it is endeavoring to obtain a loan wherewith to buy cars, and that its efforts in that regard have been opposed and thwarted by the appellant District in this case.

There stands out in the pleadings, the affidavits, the admissions, the attitude and the conduct of the parties, this stark, inescapable fact, that just as firmly as plaintiffs in the court below, appellants here, believe that it would be reasonable and just to require defendants below, appellees here, to institute the practice of furnishing them with cars, and that they should be compelled to do so, appellees believe that such a practice would be unreasonable, and that an order requiring them to institute it would be unjust.

Like the District Judge, I do not find anything in the record upon which to rest a judicial pronouncement in favor of or against the practice invoked. As it did to the District Judge, it seems clear to me, too, that under the circumstances obtaining here, as the pleadings, the affi-

davits, and the other proofs show them to be, there is presented for the administrative judgment of the Commission, a question in regard to car service and car distribution matters peculiarly within its province.[3]

The majority opinion refers to the agreement existing between carriers for the exchange of cars. This agreement is purely voluntary; it does not have the force of law.[4] It is for the Commission, under the authority of law, to deal with and prescribe rules and practices for situations of the kind in question here. It has not done so. Nothing in the record or the briefs points to any law or tariff, or any rule or order of the Commission, governing this situation. Courts may not take cognizance of a complaint brought to establish one. Nor may they, in the absence of the establishment of such a rule or order, take cognizance of a complaint for damages, or for mandamus, based on the claimed unreasonableness of assailed practices.

I had thought this definitely and beyond question settled. A reference to some of the authorities will show, I think, that it is.

United States Nav. Co. v. Cunard S. S. Co. (C.C.A.) 50 F.(2d) 83 was a suit for injunction. The court, in an exhaustive opinion [5] pointed out the great scope and sweep of the principle laid down in the Abilene Case (Texas & P. Ry. Co. v. Abilene Cotton Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075) that there must be prior resort to the Commis-

sion wherever complicated questions of fact arise, and experience in technical matters is required.

In Louisville & N. R. R. Co. v. Cory (C.C.A.) 54 F.(2d) 8, a judgment obtained against a carrier for not furnishing cars when it did not have them available was reversed on the ground that the duty of defendant, which plaintiff alleged was breached, to provide itself with reasonably adequate facilities to perform its public service, presented an administrative question for the initial determination of the Commission. Here this precise question is presented as to the Port Isabel line, while as to the trustee's line there is presented the sharply contested administrative question whether it is a reasonable or unreasonable practice to decline to furnish cars where there is no through route, and only a switching service to be performed by the connecting carrier.

In Carrollton Fuel Co. v. New Orleans & N. E. R. R. Co. (C.C.A.) 69 F.(2d) 691, 693, a suit for damages and injuries caused by the claimed discriminatory application of rates, this was reaffirmed upon the authority of many cited cases. The court there said: "Texas & Pacific R. R. Co. v. Abilene Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075, was more than the decision of a case. It laid down principles having germinative and expansive power. Subsequent decisions following its lead have in the application of its principles to new facts broadened and expanded them." c/f Norge Corporation v. Long Island R. Co. (C.C.A.) 77 F.(2d)

---

[3] Chicago, R. I. & P. Ry. Co. v. United States, 284 U.S. 80, 52 S.Ct. 87, 76 L.Ed. 177; Assigned Car Cases, 274 U. S. 564, 47 S.Ct. 727, 71 L.Ed. 1204; United States v. New River Co., 265 U.S. 533, 44 S.Ct. 610, 68 L.Ed. 1165; Midland Valley R. Co. v. Barkley, 276 U. S. 482, 48 S.Ct. 342, 72 L.Ed. 664.

"By the Esch Car Service Act [40 Stat. 101 see 49 U.S.C.A. § 1(11)], the Interstate Commerce Commission was given sweeping control over rules of car interchange and car hire settlement. Section 1(14) of this act (49 U.S.C.A. § 1(14) provides: 'The commission may, after hearing, on a complaint or upon its own initiative without complaint, establish reasonable rules, regulations, and practices with respect to car service by carriers by railroad subject to this chapter including the compensation to be paid for the use of any locomotive, car, or

other vehicle not owned by the carrier using it, and the penalties or other sanctions for nonobservance of such rules, regulations or practices.'" Chicago, R. I. & P. Ry. Co. v. United States, supra, 284 U.S. 80, at page 105, 52 S.Ct. 87, 95, 76 L.Ed. 177.

[4] "The American Railway Association is, and has been since its inception, a purely voluntary organization. No carrier is bound to subscribe to its Code of Per Diem Rules, and no carrier operating less than one hundred miles of road is eligible to voting membership." Chicago, R. I. & P. R. Co. v. United States, 284 U.S. 80, at page 103, 52 S.Ct. 87, 95, 76 L.Ed. 177.

[5] "Approved in the Supreme Court in the same case, 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408, as ably and carefully drawn."

312; Aron v. Pennsylvania R. R. Co. (C.C.A.) 80 F.(2d) 100, 103 A.L.R. 1367.

Atlantic Coast Line Ry. Co. v. Smith Bros. (C.C.A.) 63 F.(2d) 747 cited by the majority as authority for its position that the connecting carrier, where there is no through rate, is obliged to furnish cars, is wholly without application here.

A suit for overcharges brought against all the carriers participating in a movement as to which there was no joint through rate, the holding was that the initial and connecting carriers, who sought to escape reparation for the rate exacted by the terminal carrier, had made no proof rebutting the Commission's finding that the collection of the freight by the terminal carrier was the joint act of them all.

There is no such question here. What is sought is a court decree to compel a connecting carrier having no interest in or concern with a movement, except to perform a switching service, to furnish all cars which may be needed for shipments to Mexico, as to which there is no joint through rate, which do not originate on its lines, and in regard to which it gets no line haul. Whether, under all the circumstances, the Commission under its plenary authority over car service and car distribution could reasonably require the connecting carrier to institute this practice, is not before us. What is before us is whether there is any legal basis in this record for a finding and judgment that the legal duty to do so is so plain and clear as that, in advance of Commission action, it can be compelled by mandamus to perform it.

When the record is considered as a whole, in the light of the physical circumstances at the Port, and those involved in the transportation desired, in the light, too, of the authority of the Commission over matters of car service and distribution, and in the light of the discrimination claimed, I think it plain that the petition presents a matter not now ripe for the precise and legal mandate of a court, but needing first the informed administrative action of the Commission, under the undoubted authority over such matters which the Congress has conferred upon it.

I respectfully dissent from the judgment of reversal.