**THEOBALD INDUSTRIES**

v.

**DELAWARE, L. & W. R. CORP.**

Civ. 763–49.

United States District Court
D. New Jersey.

July 1, 1954.

Samuel M. Cole, Jersey City, N. J., Aaron Gordon, Jersey City, N. J., for plaintiff.

Donald R. Creighton, Hoboken, N. J., for defendant.

MODARELLI, District Judge.

This is an action brought by Theobald Industries, a shipper, against Delaware, Lackawanna and Western Railroad Corporation, a carrier, under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq. The question presented is whether this court has primary jurisdiction in an action based on a carrier's alleged excessive freight charges where at the time of the shipments there was no applicable published through commodity rate, the carrier having computed its charges by applying a combination of the aggregate of intermediate published rates from point of origin to destination.

During the period from October 31, 1946 and November 20, 1946, Oronite Chemical Company shipped from Richmond, California, to the plaintiff in Harrison, New Jersey, goods known as "Detergent Slurry" in tank cars over connecting carriers. The defendant was the delivering carrier. At the time of the shipments there was no published commodity rate for the shipment of the product in tank cars between the two points. Defendant applied the class rate of $3.01 per 100 pounds, plus transportation tax of 3%. The rate was a combination rate of $1.55 per 100 pounds from point of origin of shipment to El Paso, Texas, and a rate of $1.46. per 100 pounds from El Paso to the point of destination in New Jersey. Plaintiff contends that the point of origin to El Paso rate should have been 85¢ per 100 pounds.

The carrier has applied one freight rate; the plaintiff urges this court to apply a different rate. But plaintiff does not rely on any established rate, having alleged in its amended complaint that "At the time of the first shipment of the said goods, wares and merchandise to the plaintiff, there was no established freight rate for the same * * *." Since there is no published tariff which the court can apply to the tank car shipment of "detergent slurry", there is no issue involving the legal construction of a tariff, in which case the court's jurisdiction would be clear. Great Northern Ry. Co. v. Merchants Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943; Bernstein Bros. Pipe & Mach. Co. v. Denver & R. G. W. R. Co., 10 Cir., 193 F.2d 441. There is no issue as to which of two published rates apply, but what is the proper rate where there is no published rate. Such an issue calls for the exercise of discretion by the Interstate Commerce Commission. Moreover, Harry Theobald, Jr., vice-president of plaintiff, in a letter dated January 28, 1948, to defendant, requested a refund, noting "that a tank car rate of $1.48 was established for this commodity on November 23, 1946 (based on a petition of the Oronite Chemical Company—the shipper of origin). It is contended that it is *unreasonable and unjust* to set a higher tank car rate than the existing class rate." (Emphasis supplied.) Thus, plaintiff has challenged the reasonableness of defendant's rate formula and that is primarily a problem for the expertness of the administrative agency established to assure equal rights to all shippers, to preserve uniformity by preventing discrimination. See Armour &

Co. v. Alton R. Co., 312 U.S. 195, 201, 202, 61 S.Ct. 498, 85 L.Ed. 771; Schwartzman v. United Air Lines Transp. Corp., D.C., 6 F.R.D. 517, for an excellent study and analysis of cases by Judge Delehant dealing with the doctrine of primary jurisdiction of administrative commissions as invoked by court decisions. If this court were to render a decision on the merits of the case, we would, in effect, be establishing a tariff, which is the exclusive duty of the Interstate Commerce Commission.

While the court's lack of jurisdiction over the subject matter of this action is dispositive of the case, the court notes that the action for overcharges was commenced beyond the two-year period permitted by the statute of limitations, 49 U.S.C.A. § 16(3).

"(c) For recovery of overcharges action at law shall be begun on complaint filed with the commission against carriers subject to this chapter within two years from the time the cause of action accrues, and not after, * * * except that if claim for the overcharge has been presented in writing to the carrier within the two-year period of limitation said period shall be extended to include six months from the time notice in writing is given by the carrier to the claimant of disallowance of the claim, or any part or parts thereof, specified in the notice.

*　*　*　*　*　*

"(g) The term 'overcharges' as used in this section shall be deemed to mean charges for transportation services in excess of those applicable thereto under the tariffs lawfully on file with the commission."

Plaintiff's present action was filed on September 28, 1949. The transactions upon which the cause of action is based occurred between October 31 and November 20, 1946. Thus the two-year statutory period ended on November 20, 1948, and the action is barred, unless the facts in this case require the court to apply the exception in subdivision (c), supra, pertaining to claims for over-charges which, under certain circumstances extends that period for six months.

In the letter dated January 28, 1948, plaintiff's vice-president presented a "claim for refund based on [certain] overcharges." Defendant's freight traffic manager replied by letter dated February 14, 1948. If defendant's letter was a "notice * * * of disallowance of the claim" the two-year period of limitation nevertheless applies for the reason that the six months' extension period, if applicable, terminated on August 14, 1948, and while subdivision (c) is not clear on the point, I believe claimant is entitled to the benefit of the longer period.

Defendant contends that the January 28, 1948 letter by plaintiff was not a claim for a refund of alleged overcharges, but that it was a claim for reparation. Both words are contained in plaintiff's letter. While the label-language used by a party is a proper guide to intent, it is not necessary for the court to decide this puzzling semantic problem in that the court finds that the reply letter by defendant was a "disallowance" notice within the meaning of the statute. In the final paragraph of its letter, plaintiff requested of defendant that it "file a special docket application for reparations on this claim before the Interstate Commerce Commission." In reply thereto, defendant stated that "* * * no application can be made to the Interstate Commerce Commission for authority to refund * * * You understand, of course, that before a reparation application can be made, the rate sought must be established by tariff, and no such attempt has been made." Reasonably interpreted, such language clearly put plaintiff on notice that defendant disallowed the claim.

An examination of the original complaint clearly indicates that the plaintiff's claim was not for overcharges but for reparation. In the original complaint, plaintiff alleged that at the time of the tank car movements, there was no established freight rate on Detergent Slurry

**238**

and that freight charges for such transportation were assessed at a class rate of $3.01 per hundred pounds plus the transportation tax of 3%. The original complaint further alleges that subsequently, on November 23, 1946, a freight rate of $1.30 per hundred pounds, plus transportation tax was established and plaintiff demands the sum of $9,068.50, being the difference between the transportation charges which accrued on said cars under the established rate of $3.01 and the rate of $1.30 per hundred pounds established on November 23, 1946, subsequent to the transportation of the tank car shipments.

It was not until the amended complaint was filed herein after defendant had pleaded as an affirmative defense that the court lacked jurisdiction over the subject matter and a motion had been made by defendant to dismiss the complaint for want of jurisdiction that plaintiff amended its complaint to include the claim for overcharge. While it is true that plaintiff used the words "overcharge" in the original complaint, it was used in a generic and not in a specific or technical sense and an analysis of the original complaint clearly shows that plaintiff was proceeding on the theory that it was entitled to reparations. If plaintiff's letter of January 28, 1948, was a claim, it was at best a claim for reparations and not overcharges.

An action for reparation would have been barred by 49 U.S.C.A. § 16(3) (b):

"All complaints against carriers subject to this chapter for the recovery of damages not based on overcharges shall be filed with the commission within two years from the time the cause of action accrues, and not after, subject to subdivision (d) of this paragraph."

■ It is hornbook law that a shipper seeking reparation based on unreasonableness of freight rate must seek redress through the Interstate Commerce Commission.

Since this court has no jurisdiction over the subject matter of the litigation and since the action is outlawed by the statutory limitations, the complaint as amended is dismissed.

The foregoing opinion shall constitute findings of fact and conclusions of law, as required by Fed.Rules Civ.Proc. Rule 52, 28 U.S.C.A.

An order may be submitted in conformity with the opinion herein expressed.