**UNITED STATES of America, Plaintiff,**

v.

**Maxwell Courtney GARNER, Defendant.**

**Civil No. 657.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Sept. 9, 1955.

---

Julian T. Gaskill, U. S. Atty., Raleigh, N. C., for plaintiff.

Howard E. Manning, Raleigh, N. C., for defendant.

GILLIAM, District Judge.

This is an action instituted by the United States under 28 U.S.C. § 1345, to recover from the defendant, doing business as M. C. Garner Truck Lines, alleged overpayments received for the transportation of Government property during the years 1944 and 1945. The case was heard without a jury.

During the years in question the defendant operated as an irregular route common carrier of property by motor vehicle in interstate commerce. Two certificates of public convenience and necessity were issued to him by the Interstate Commerce Commission, dated July 31, 1944 and April 23, 1945, under docket number NC 63, 295.

Upon the issuance of his first certificate, defendant executed and filed with the Commission a power of attorney in usual form, naming R. S. Cooper his agent to file rates, tariffs and charges in accordance with law and regulations, and, either directly or through Cooper, defendant filed power of attorney in usual form naming C. F. Jackson his agent to file classifications. Accordingly, defendant was listed as a participating motor carrier in certain Motor Carrier Traffic Association tariffs issued by agent Cooper and certain National Motor Freight Classifications issued by agent Jackson.

During 1944 and 1945 defendant transported for the United States various shipments of war materials, military supplies and equipment from and to Cherry Point, N. C., and other military bases. Approximately three-fourths of the shipments were airplane engines. Defendant's operating rights under his certificates of convenience and necessity did not authorize him to haul any of these shipments, but upon defendant's application the Commission at various times granted him temporary operating authority under Section 210a of the interstate Commerce Act, 49 U.S.C.A. § 310a. Pursuant to these Commission orders, and in accordance with Commission regulations, defendant filed with the Bureau of Motor Carriers nine emergency transportation tariffs (Tariffs MF–I.C.C. No. W–1 through W–8, including two W–4's). These tariffs prescribed commodity rates on designated articles or groups of articles between specific points.

Thus, a part of the shipments in question were made under defendant's temporary operating rights and temporary tariffs. The remaining shipments were made without authority, and defendant could have refused to transport the property involved.

In computing his freight bills, defendant followed his filed emergency tariffs, where applicable, and used the published tariffs of other carriers as a guide in charging what he felt was a reasonable rate for the remaining shipments. In determining his rates on airplane engines he followed closely the class rates for the classification "airplane parts", which are 125 percent of first class rates, rather than the rates for the classification "internal combustion engines", which are 40 percent of first class.

Defendant's bills were paid upon presentation. Upon later audit, as authorized by 49 U.S.C.A. § 66, the General Accounting Office concluded that defendant had been overpaid in the amount of $80,280.09, plus the sum of $184.99 representing the value of a lost shipment and the unearned freight thereon. Defendant admits that he owes the $184.99.

The General Accounting Office disregarded defendant's emergency tariffs and computed the freight charges by reference to the National Motor Freight Classifications and Motor Carrier Traffic Association tariffs which listed the defendant as a participating carrier. In the case of shipments outside the scope of these tariffs, published rates of other authorized motor carriers were applied. In all cases the GAO classified airplane engines as internal combustion engines at 40 percent of first class rates.

We are met at the threshold by the question of the Court's jurisdiction over the subject matter of the action.

It is well settled that federal and state courts may entertain actions by shippers to recover freight charges which are in excess of those stated in tariffs duly and properly filed with the Commission, and in such actions the courts may decide questions of construction of tariffs as legal documents. Great Northern R. Co. v. Merchants' Elevator Co., 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943. But it is equally well established that courts have no authority in such actions to declare a published rate unreasonable or to determine a reasonable rate and award damages accordingly. Texas & P. Ry. Co. v. Abilene Cotton

Oil Co., 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553.

■ The Act requires all rates to be "just and reasonable", 49 U.S.C.A. § 316 (b), but Congress has delegated to the Commission the authority to determine reasonableness; and whenever a published rate, rule or practice is attacked as unreasonable, or whenever a reasonable rate, rule or practice must be established, there must be preliminary resort to the Commission. Robinson v. Baltimore & Ohio R. R., 222 U.S. 506, 32 S.Ct. 114, 56 L.Ed. 288; Northern P. Ry. Co. v. Solum, 247 U.S. 477, 38 S.Ct. 550, 62 L.Ed. 1221; Midland Valley R. R. Co. v. Barkley, 276 U.S. 482, 48 S.Ct. 342, 72 L.Ed. 664; Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409; Armour & Co. v. Alton R. Co., 312 U.S. 195, 61 S.Ct. 498, 85 L.Ed. 771; Atlantic Coast Line R. R. Co. v. Hampton and Branchville R. Co., 4 Cir., 80 F.2d 797.

Such being the law, the sole question is whether under the facts in this case there is a legal question for the Court's decision or rate-fixing problem for the Commission.

■ A mere statement of the established legal principles shows that this Court has no power to change the rates in defendant's published emergency tariffs. These tariffs covered transportation services which defendant was specifically authorized by lawful Commission orders to perform. The tariffs were published in accordance with the Act, 49 U.S.C.A. §§ 310a, 317, and the Commission regulations, 49 C.F.R. (1949 ed.) Secs. 187.21 through 187.47; 187.100. The rates in these tariffs were commodity rates, published to apply on a specifically named or described commodity or commodities, principally airplane engines, and under the Commission's regulations a published commodity rate is the applicable rate and the only rate that may be applied, even though the class rate covering the shipment may be lower. 49 C.F.R. (1949 ed.) Sec. 187.28 (f) (2).

■ Plaintiff argues that the rates published in defendant's temporary tariffs are unreasonable and unjust, but this argument must be addressed to the Commission, not the Court. The Commission is authorized by Part II of the Act, 49 U.S.C.A. § 316(e), whenever it is of the opinion that a rate is unjust or unreasonable, to determine and prescribe the lawful rate to be observed. Although Part II does not give the Commission the power set forth in Part I, 49 U.S.C.A. § 16(1), to award reparations, the Commission feels that it can determine the past unreasonableness of published rates and that upon such a determination a shipper can recover the overcharge by court action. W. A. Barrows Porcelain Enamel Co. v. Cushman M. Delivery, 11 N.C.C. 365.

■ With respect to the shipments not covered by the temporary tariffs, the basic fact is that defendant was transporting the Government's property without lawful authority. Neither his certificates of convenience and necessity nor the Commission's orders gave him any operating rights covering these shipments. The Act unequivocally forbids carriage of goods without a certificate of convenience and necessity or a temporary Commission order. 49 U.S.C.A. §§ 306, 322. The fact that the transportation is for the United States does not alter this prohibition. U.S.A.C. Transport, Inc. v. United States, 10 Cir., 203 F.2d 878, certiorari denied, 345 U.S. 997, 73 S.Ct. 1139, 97 L.Ed. 1403.

Since the transportation of these remaining shipments was not within the defendant's rights, it follows that there were no lawfully published tariffs or rates covering it. Sec. 217(a) of the Act, 49 U.S.C.A. § 317(a), provides that:

"Every common carrier by motor vehicle shall file with the Commission, and print, and keep open to public inspection, tariffs showing all the rates, fares, and charges for transportation, and all services in connection therewith, of passengers or property in interstate or foreign commerce *between points on its own*

*route and between points on its own route and points on the route of any other such carrier,* or on the route of any common carrier by railroad and/or express and/or water, when a *through route and joint rate shall have been established."* (Emphasis added.)

Most, if not all, of the shipments which were outside the scope of the temporary tariffs were to points beyond defendant's routes, and there were no applicable through routes and joint rates established by defendant and other carriers. Furthermore, none of the property in question was within the classes described and authorized in defendant's certificates of convenience and necessity.

Although defendant filed powers of attorney in usual form, in accordance with the regulations, 49 C.F.R. (1949 ed.) Sec. 187.46, naming Cooper and Jackson as his agents to file tariffs and classifications, and defendant was listed as a participating carrier in tariffs published by them which contained rates for shipments of the kind and between the points here involved, defendant states, and correctly, that his agents' power to file rates was limited to the scope of his operating rights, and that the only rates in their tariffs which affected him were those within said rights. No other rates could be lawfully filed by defendant; any attempt to file other rates would be rejected by the Commission. *Powder, from Parsons, Kans. to East Alton, Ill.,* 52 M.C.C. 471.

■ In the absence of lawfully published rates covering the unauthorized transportation services furnished by defendant, there is no issue within the province of this Court to decide. *Theobald Industries v. Delaware, L. & W. R. R.,* D.C., 122 F.Supp. 235. In similar situations the Commission has fixed reasonable rates. *Shannon Spring Bed Mfg. Co. v. North American Van Lines,* No. M.C.C. 1294, 9 Fed. Carrier Cases 32,641.

Since there must be action by the Commission, should the case be dismissed or should it be held in abeyance pending the Commission's decision? This question has recently received the careful attention of the Court of Appeals for the Eighth Circuit, and the latter alternative was adopted. *United States v. Kansas City Southern Ry.,* 217 F.2d 763. This procedure is likewise recommended by the Commission, *Bell Potato Chip Co. v. Aberdeen Truck Line,* 43 M.C.C. 337, and it will be followed by this Court.

Two final points may be disposed of. Plaintiff urges the Court to render a decision on the merits now, and cites *United States v. Strickland Transportation Co.,* 5 Cir., 200 F.2d 234, Id., 5 Cir., 204 F.2d 325, certiorari denied, 346 U.S. 856, 74 S.Ct. 72, 98 L.Ed. 370; *Hughes Transportation, Inc., v. United States,* D.C., 109 F.Supp. 373. These cases are distinguishable. They involve construction of published class rate tariffs and classifications, specifically, the question of which of two classifications was applicable to airplane engines. See also *United States v. Missouri-Kansas-Texas R.R., Co.,* 5 Cir., 194 F.2d 777.

■ Defendant, on the other hand, argues that he was not required to haul the unauthorized shipments, he was induced to continue to do so by the Government's payments of the rates in his freight bills, he will suffer serious loss if these rates are not upheld, and therefore the United States is estopped to challenge them. This contention is without merit. There is no estoppel against either the carrier or the shipper, where the lawfulness of interstate freight rates is concerned. *Louisville & N. R. R. v. Central Iron & Coal Co.,* 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900; *Hughes Transportation, Inc., v. United States,* 121 F.Supp. 212, 235, 128 Ct.Cl. 221.

Judgment will be entered ordering the defendant to pay plaintiff the sum of $184.99, with interest from July 11, 1945, and ordering the action held in abeyance until plaintiff has had an opportunity to present to the Interstate Commerce Commission for answer the question of the reasonableness of the rates charged by defendant.