SHIPPERS' CAR SUPPLY COMMITTEE, an Oregon corporation, Cosima D. MacInnis, individually, doing business as Wren Planing Mill, and Cosima D. MacInnis, as Executrix of the Estate of A. L. MacInnis, Deceased, Plaintiffs,

v.

INTERSTATE COMMERCE COMMISSION and United States of America, Defendants.

No. 8432.

United States District Court
D. Oregon.

Jan. 22, 1958.

Dean Ellis, of Ellis & Ellis, Portland, Or., for plaintiffs.

James E. Lyons, San Francisco, Cal., for plaintiffs and intervener.

Robert Ginnane, Washington, D. C., for defendant Interstate Commerce Commission.

C. E. Luckey, U. S. Dist. Atty., Portland, Or., for U. S.

Before FEE, Circuit Judge, and Mc-COLLOCH and EAST, District Judges.

EAST, District Judge.

These parties seek to review and set aside that certain order entered by the Interstate Commerce Commission (Commission) on May 26, 1954, in the proceedings entitled Shippers' Car Supply Committee, an Oregon Corporation (Shippers) v. Southern Pacific Co., a Corporation (S.P.) Docket No. 30708.

### Jurisdiction

Jurisdiction of this Three Judge Court [1] is invoked under the provisions

---

1. This cause was assigned to the District Judge, William G. East of the District of Oregon for hearing upon its merits by Chief District Judge, Claude McColloch.

This three judge court, consisting of Circuit Judge James Alger Fee, Ninth Circuit, Chief District Judge Claude McColloch and District Judge William G. East, both of the District of Oregon:

of Title 28 U.S.C. §§ 1336, 1398, 2321–2325, 2284 and Section 17(9) of the Interstate Commerce Act, Title 49 U.S.C.A. § 17.

## Parties

The plaintiff Shippers is a non-profit corporation organized under the laws of the State of Oregon to work with the railroads, railroad organizations, state and national, transportation regulatory bodies, and lumber trade organizations, avowedly to improve the freight car supply, especially in Western Oregon, and to keep its members informed concerning railroad car supply and other transportation matters.

The plaintiff, Cosima D. MacInnis, and her husband A. L. MacInnis, now deceased, were during all times relevant to this matter co-partners engaged in carrying on a lumber business under the name and style of Wren Planing Mill (Wren). Wren was an original joint intervening plaintiff in the proceedings before the defendant Commission, prior to the institution of the above proceedings in this Court the said A. L. MacInnis, demised, and the plaintiff, Cosima D. MacInnis, appears herein individually and as executrix of the Estate of A. L. MacInnis, deceased. The plaintiff Cosima D. MacInnis, is the successor to the above co-partnership in the ownership and operation of Wren. Thru-out Wren has been engaged in the operation of a saw mill, lumber manufacturing plant and planing mill located in the Yaquina branch of S. P., in the regular course of its business marketed its products through interstate commerce and was at all times wholly dependent upon the S. P. and its connecting carriers for the furnishing and supplying of railroad cars and railroad service in the marketing of its lumber products in interstate commerce.

The defendants, Commission and United States of America, were named defendants pursuant to the provisions of Title 28 U.S.C. § 2322. The intervening defendant S. P. was the defendant in the above mentioned proceedings before the Commission and is a corporation existing under and by virtue of the laws of the State of Delaware, and is a common carrier engaged in the transportation of property by railroad in the State of Oregon and other states of the union, and as such is a common carrier subject to the provisions of the Interstate Commerce Act. S. P. was permitted to intervene as a party defendant to this action by order of this Court, dated August 13th, 1956.

## Controversy

On November 6, 1950, Shippers complained to the Commission and charged S. P. with the following specific violations of law:

1. Failure to provide transportation of property upon reasonable request, particularly in failing to provide adequate trackage, motive power, and other facilities and equipment to meet the demands of the shipping public, in violation of Section 1(4) of the Interstate Commerce Act, 49 U.S.C.A. § 1(4).

2. Failure to furnish adequate car service, particularly (a) in failing and neglecting to purchase or construct a supply of cars adequate for the needs of its shippers; (b) failing to effect suitable arrangements with connecting carriers for interchange of empty and loaded cars; and (c) failing to employ an adequate staff of competent employees to promptly, efficiently and fairly distribute the supply of cars available, in violation of section 1 (11) of the act.

3. Causing undue and unreasonable prejudice and disadvantage to complainant's members by failure to provide car service to them in the same proportion to actual requirements as were provided to other shippers on its lines in Oregon and elsewhere, contrary to section 3(1) of the act. 49 U.S.C.A. § 3(1).

4. Causing undue and unreasonable prejudice and disadvantage to shippers generally on its lines in

Oregon and giving undue and unreasonable preference and advantage to other shippers on its lines in other States, in violation of Section 3(1) of the act.

5. Causing substantial increases in transportation and marketing costs, substantial losses in labor, production, and profits of complainant's members and others, by curtailing their production by preventing them from making deliveries on contracts and from selling their products in the open market, which has resulted in damage and loss of goodwill for which the defendant is liable.

Intervening Wren claimed that the unlawful acts of S. P. prevented them from receiving an adequate supply of railroad cars and adequate railroad service from S. P. and as a result thereof have suffered damages and injuries primarily by way of loss of profits which would have been realized but for the failure and unlawful acts of S. P. aforesaid, and sought reparations from S. P. in the amount of $154,385.86. A hearing was duly held by an examiner for the Commission who entered a proposed report to the Commission, exceptions to which were filed by plaintiffs and by S. P. Thereafter, on May 26, 1954, the Commission, Division 2, entered its findings and order dismissing plaintiffs' respective complaints.

The plaintiffs herein insist that the said Findings and Order of Commission of May 26, 1954, and a subsequent Order of the Commission, dated October 4, 1954, denying reconsideration are arbitrary and capricious in that they are unsupported by substantial evidence and contrary to the evidence of the record in the proceedings before the Commission and in complete disregard of applicable law, and pray that the order of the Commission be perpetually enjoined and that the matter be remanded to the Commission to enter Findings and Order in accordance with the facts of the record and the applicable law and specifically requiring S. P. to provide plaintiffs with adequate railroad transportation service on a non-discriminatory basis and requiring S. P. to desist from a discriminatory practice in the furnishing of railroad cars to plaintiffs. Wren further prays that the Commission be directed to award such reparation against S. P. as court shall find the plaintiff is entitled to recover under the evidence. Issue on the merits has been joined by the Commission, United States of America and S. P.

Furthermore Commission and United States of America moved the Court:

"—to dismiss that part of the plaintiffs' complaint relating to the claim for damages by Cosima D. MacInnis, individually, doing business as Wren Planning Mill, and Cosima D. MacInnis as Executrix of the estate of A. L. MacInnis, deceased, for the reason that the claim is not an appropriate one for review by the three-judge district court sought to be convened pursuant to the complaint and that such Court is without jurisdiction of said part of this proceeding."

and/or to strike certain portions of plaintiffs petition.

S. P. has moved the court:

"—for an order dismissing the action for (1) lack of jurisdiction over the subject matter, and (2) failure to state a claim upon which relief can be granted, or in the alternative that the Court enter, pursuant to Rule 56 of the Federal Rules of Civil Procedure [28 U.S.C.A.], a summary judgment in defendants' favor dismissing the action, on the ground that there is no genuine issue as to any material fact and that defendants are entitled to a judgment as a matter of law."

### Defendant's Motions

■ This three judge court concludes that it is without jurisdiction to review that portion of the Commission's Findings and Order dismissing Wren's claim for damages and reparations. United States v. Interstate Commerce Commission, 337 U.S. 426, at page 443, 69 S.Ct.

1410, at page 1420, 93 L.Ed. 1451.[2] Therefore the issue of Wren's claim for damages and reparations should be severed and segregated from the remaining issues herein before this three judge court and the segregated issue should be submitted to the Honorable William G. East, District Judge for this District,[3] for determination.

■ In determining whether or not the Findings and Order of the Commission should be upheld we must look at the record made before the examiner for the Commission in the light of the facts existing prior to September 26th, 1952.[4] Therefore, that part of the plaintiffs' petition and cause which seeks relief in the future, that is, from and after September 26th, 1952, is moot and presents no justiciable controversy. United States v. Southern Pacific Co., D.C.D.Or.1947, 75 F.Supp. 336. To the foregoing extent, the motions of the Commission and United States of America to dismiss in part and/or to strike portions of plaintiffs' petition, and the alternative motions of S. P. to dismiss or for a summary judgment before this three-judge court should be allowed, otherwise each should be denied.

### On the Merits

■ Our inquiry and office is not to weigh the evidence nor question the soundness of the reasoning "of a tribunal (Commission) appointed by law and informed by experience," but to determine if the Commission's Findings and Order lay within its statutory power and are supported by substantial evidence in the record as a whole and free from arbitrary and capricious action. Interstate Commerce Commission v. Martin Bros. Box Co., 9 Cir., 1955, 219 F.2d 811 at page 813, certiorari denied 350 U.S. 823, 76 S.Ct. 50, 100 L.Ed. 735, and cases cited therein.

■ The plaintiffs do not contend that Commission was without statutory power to make its Findings and Orders, but do insist that it was acting arbitrarily and capriciously in its ultimate determination and that said Findings and Orders are not supported by evidence. The report of the Commission is some 28 sheets in quantity, its quality is self-evident by its clear and fully documented résumé and its rational interpretation and conclusions from the evidence before it.[5]

■■ Since the year 1946 seasonable "railroad car shortages" for use by the lumber industries in Western Oregon have been as recurrent as the "fall rains." These railroad car shortages have been the subject of recurring orders of the Commission restricting abusive

---

2. "The same one-judge trial and appeal procedure available for enforcement of an award order would appear to be an equally appropriate and adequate tribunal for adjudication of validity of a Commission order denying reparations. * * *

"We have frequently pointed out the importance of limiting the three-judge court procedure within its expressly stated confines. We are confident that in holding that one judge rather than three should entertain cases challenging Commission reparation orders we interpret the congressional expediting procedure and the Interstate Commerce Act in accordance with their basic purpose." See also Martin Bros. Box Co. v. Interstate Commerce Commission, D.C. Ore., 128 F.Supp. 919, 921.

3. See Footnote 1.

4. Date on which Commissions examiner closed his hearing.

5. "The courts have repeatedly pointed out that whether given rates or practices are 'reasonable' or 'unduly prejudicial' are factual determinations confided by Congress to the judgment and discretion of the Commission. That this must be so is manifest since the sections of the Act involved contain no definition of what is reasonable or unreasonable or what constitutes undue prejudice. We quote from or summarize a few of the decisions. In Virginian Ry. Co. v. United States, supra, 272 U.S. [658] at page 665, 47 S.Ct. [222] at page 225, [71 L. Ed. 463], it was held: 'The finding of reasonablness, like that of undue prejudice, is a determination of a fact by a tribunal "informed by experience." '" Interstate Commerce Commission v. Martin Bros. Box Co., 9 Cir., 219 F.2d 811, at page 813.

uses of railroad cars by certain lumber shippers [6] and have been the subject of Congressional, Lumber Trade Associations and Railroad Associations inquiries all of which have proposed suggested remedies without satisfactory solution. To lay the blame of these car shortages at the door of S. P. by reason of improper service or inadequate equipment is beyond common knowledge and reason. The Commissions conclusion that the record fails

"—to establish that the defendant failed to provide transportation upon reasonable request therefor, or failed to furnish adequate car service within the limits of its capacity, or subjected any of the complainant's members to undue or unreasonable prejudice or disadvantage, as alleged."

is a logical and rational conclusion from its Findings of Fact and therefore the Commission was not arbitrary and capricious in issuing its Orders and the same are final.[7]

■ The record in this case is not unlike a mirror of the facts related in Interstate Commerce Commission v. Martin Bros. Box Co., supra, furthermore the record shows inter alia, the increasing number of cars originating and terminating by S. P. in Oregon during the years 1947–51, inclusive as follows:

"1947 ................... 479,000
1948 ................... 478,000
1949 ................... 449,000
1950 ................... 460,000
1951 ................... 507,000

"It will be noted that 47,000 more carloads were originated and terminated in 1951 than in 1950. Of these, 15,635 cars consisted of lumber and forest products. The increase in volume of lumber and forest products carried was 619,400 tons.

"As to operation of trains, witness Winter showed an operation of 1,672 westbound freight trains in the period April to October 1950 between Eugene and Crescent Lake, whereas during the like period in 1951, defendant moved a total of 1,747 such trains over the same section of line."

There is evidence in the record that throughout the time in question S. P. was engaged in modernizing its locomotive equipment with diesels and purchasing new rolling stock. The evidence reveals that during the period of shortage of cars S. P. adopted a policy of allotting cars to the various mills on a quota or rated basis. This policy was universal for all saw mills of the Portland Division of S. P., and while unsatisfactory to the saw mill shippers it was not discriminatory against the plaintiffs.[8]

While in some phases the evidence offered by the parties before the examiner is contradictory from the documentations in the briefs of the parties and from the record as a whole, suffice, to say, the record reveals that the Commission's Findings of Fact are supported by substantial evidence and that its conclusions are rational.

Therefore, plaintiff shippers' petition and its cause should be dismissed.

6. Daugherty Lumber Co. v. United States, D.C., 141 F.Supp. 576 (Restricting sales in transit shipments).

7. Mississippi Valley Barge Line v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260.

8. In Midland Valley R. Co. v. Barkley, 276 U.S. 482, 484–485, 48 S.Ct. 342, 343, 72 L.Ed. 664, the Supreme Court said: " * * * The right of a shipper to cars is not an absolute right and the carrier is not liable if its failure to furnish cars was the result of sudden and great demands which it had no reason to apprehend would be made and which it could not reasonably have been expected to meet in full. The law exacts only what is reasonable from such carriers."

"The law exacts only what is reasonable from such carriers, but at the same time requires that they should be equally reasonable in the treatment of their patrons. In case of car shortage occasioned by unexpected demands, they are bound to treat shippers fairly, if not identically. (Citing authorities.)" Interstate Commerce Commission v. Martin Bros. Box Co., supra [219 F.2d 815].