**DAUGHERTY LUMBER CO. et al.,**
Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Atlas Lumber Company et al., Intervenors—Pro-Plaintiff,

Star Lumber Company, a copartnership, et al., Intervenors—Pro-Plaintiff,

The National Industrial Traffic League, Intervenor—Pro-Defendant,

West Coast Lumbermen's Association, Western Pine Association and California Redwood Association, Intervenors —Pro-Defendant.

**Civ. No. 8541.**

United States District Court
D. Oregon.

May 31, 1956.

· John M. Hickson, Portland, Or., Bartle, Allen & Anderson, Eugene, Or., for intervenor Star Lumber and others.

William C. McCulloch, Winfree, McCulloch, Shuler & Sayre, Portland, Or., for intervenor West Coast Lumbermen's Ass'n and others.

Burchmore, Good & Bobinette, Chicago, Ill., for intervenor National Industrial Traffic League.

James E. Kilday, John H. D. Wigger, Attys., Dept. of Justice, Washington, D. C., Stanley N. Barnes, Asst. Atty. Gen., Robert W. Ginnane, Gen. Counsel, Leo H. Pou, Associate Gen. Counsel, Interstate Commerce Commission, Washington, D. C., C. E. Luckey, U. S. Atty. for Dist. of Oregon, Portland, Or., for United States and Interstate Commerce Commission.

Before STEPHENS, Circuit Judge, and SOLOMON and EAST, District Judges.

EAST, District Judge.

The plaintiffs, Daugherty Lumber Co., et al., consist of some five business organizations engaged in the business of buying and selling lumber on a wholesale basis and as such utilize railway transportation for the movement of such lumber products from the Pacific Northwest to other portions of the United States. One of the plaintiffs is a manufacturer of lumber products and disposes of its products to the mentioned wholesale lumber brokers.

The intervenors, Atlas Lumber Company, et al., pro-plaintiff, consist of some sixty-three business organizations engaged in the sale and transport of lumber products through interstate commerce throughout the United States.

The intervenors, Star Lumber Company, et al., pro-plaintiff, consist of some six business organizations engaged in the manufacture and distribution of lumber products through interstate commerce originating from the State of Oregon.

The intervenor, the National Industrial Traffic League, pro-defendant, is a

John M. Hickson, Portland, Or., for plaintiffs.

voluntary national association composed of and representing business organizations engaged in the shipment and receipt of commodities transported by railroads in every state of the United States.

The intervenors, West Coast Lumbermen's Association, et al., pro-defendant, are Associations representing business oganizations engaged in the manufacture, sale and distribution of lumber products throughout the Pacific Northwest.

The defendants are the United States of America and its administrative agency, the Interstate Commerce Commission (Commission).

## Commission's Order.

On March 19, 1956, the Commission issued Service Order No. 910, to be effective 12:01 a. m., April 9, 1956.

The plaintiffs complained and by order, per EAST, D. J., dated April 7, 1956, the Commission was temporarily restrained in the execution of said order.

On April 13, 1956, the Commission made a "Corrected Service Order No. 910", to be dated as of March 19, 1956. The order, as corrected, to our concern, reads:

"It appearing, that an acute shortage of freight cars exists in all sections of the country; that the movement of loaded freight cars is being delayed solely for the purpose of gaining additional time; that present rules, regulations, and practices with respect to the use, supply, control, movement, distribution, exchange, interchange, and return of freight cars are insufficient to promote the most efficient utilization of cars; it is the opinion of the Commission that an emergency exists requiring immediate action to promote car service in the interest of the public and the commerce of the people. Accordingly, the Commission finds that notice and public procedure are impracticable and contrary to the public interest, and that good cause exists for making

this order effective upon less than thirty days' notice."

Whereupon the following regulations of concern were prescribed:

"(1) No common carrier by railroad subject to the Interstate Commerce Act shall wilfully delay the movement of loaded freight cars by holding such cars in yards, terminals, or sidings for the purpose of increasing the time in transit of such loaded cars.

"(2) Loaded cars shall not be set out between terminals except in cases of emergencies or sound operating requirements.

"(3) Backhauling loaded cars for the purpose of increasing the time in transit shall constitute wilful delay and is prohibited.

"(4) Through loaded cars shall not be handled on local or way freight trains for the purpose of increasing the time in transit of such loaded cars.

"(5) The use by any common carrier by railroad, for the movement of loaded freight cars over its line, of any route other than its usual and customary fast freight route from point of receipt of the car from consignee or connecting line, except in emergencies, or for the purpose of according a lawfully established transit privilege (not including a diversion or reconsignment privilege), is hereby prohibited."

Furthermore, the Commission, in deference to the mentioned restraining order, stated in its official report that "No action will be taken to enforce Service Order No. 910 until further order of the Commission."

## Authority of the Commission.

Section 1(15) of the Interstate Commerce Act, 49 U.S.C.A. § 1(15), reads as follows:

"Whenever the commission *is of opinion* (italics ours) that shortage of equipment, congestion of traffic,

or other emergency requiring immediate action exists in any section of the country, the commission shall have, and it is hereby given, authority, either upon complaint or upon its own initiative without complaint, at once, if it so orders, without answer or other formal pleading by the interested carrier or carriers, and with or without notice, hearing, or the making or filing of a report, according as the commission may determine: (a) to suspend the operation of any or all rules, regulations, or practices then established with respect to car service for such time as may be determined by the commission; (b) to make such just and reasonable directions with respect to car service without regard to the ownership as between carriers of locomotives, cars, and other vehicles, during such emergency as in its opinion will best promote the service in the interest of the public and the commerce of the people, upon such terms of compensation as between the carriers as they may agree upon, or, in the event of their disagreement, as the commission may after subsequent hearing find to be just and reasonable; * * *."

It is conceded by all of the parties that the Commission acted upon its own initiative without complaint and without notice, hearing or the making or filing of any report except to publicize Order No. 910 after issuance in the Federal Register.

### Contentions of Plaintiffs and Intervenors, Pro-Plaintiffs.

These parties, through plaintiffs' petition, assert that for many years last past plaintiffs and other lumber manufacturers and wholesalers of lumber products situated in the States of Oregon, Washington and California, have traditionally operated their respective businesses in the following manner:

Upon completion of loading a car of lumber, the bill of lading and ownership of said car has been transferred to a lumber wholesaler or lumber broker who thereupon pays the invoice price of said car even though said wholesaler or broker has no present customer for said car; said wholesaler then normally commences the movement of said car toward the Eastern Seaboard without instructions to the railroad to expedite the movement of said car, but with instructions to the railroad to keep the wholesaler advised of the progress of said car toward a particular transfer or diversion point; during the Eastward progress of said car, the wholesaler finds a purchaser for same, and upon finding such purchaser the railroad is notified to move said car to destination forthwith.

They claim that said Service Order No. 910 of the Interstate Commerce Commission, the subject of this Bill, would overnight change this traditional method of buying, selling and transporting lumber between points on the Pacific Coast and points in the eastern parts of the United States without affording to lumber manufacturers or wholesalers an opportunity, if such were possible, to revise their methods of operation.

Further, "that if said Service Order No. 910 were allowed to become effective, it would seriously and adversely affect plaintiffs in the conduct of their respective businesses in the following manner:

"1. That wholesalers would refuse to purchase cars of lumber from sawmills until such time as they had a specific order for said cars and therefore plaintiffs would have to accumulate large inventories of lumber far beyond their capacity to finance same, or in the alternative, plaintiffs would have to stop production until such time as plaintiffs should receive an order for a specific type of lumber and then proceed to cut same and load the car and invoice the wholesaler.

"2. That said order would prevent plaintiffs and others similarly situated from maintaining an efficient and economic production schedule in that they would no longer be able to set up their respective mills to cut a substantial

amount of the same type of lumber but rather would be forced to set up and re-set over short periods of time to cut specific orders.

"3. That said Service Order No. 910 would require such large investments of plaintiffs in their respective businesses as to make it impossible for plaintiffs to continue their businesses.

"4. That said Service Order No. 910 will have the effect of eliminating and destroying many small lumber manufac-turers and diverting their business to large manufacturers who do not sell their lumber on a diversion basis.

"5. That said Service Order No. 910 would result in requiring small lumber manufacturers to maintain inventories of lumber at their respective yards far be-yond their financial capacity to do so and thus discriminate against them in favor of larger and better financed lum-ber companies.

"6. That purchasers of lumber in the East would also be adversely affected in that they would be unable to control the arrival time of cars upon their spur tracks and thereby prevent economical and efficient unloading of the same and would require large expenditures of such purchasers of additional spur tracks and additional facilities.

"7. That the enforcement of said Service Order No. 910 would tend to bunch loaded cars at switching points thereby delaying the movement of cars requiring expedited service.

"8. That instead of elevating [sic] any actual or contemplated car shortage, the effect of said Service Order No. 910 would be to aggravate the situation.

"9. That there is no actual car short-age at the present time, nor was there at the time the Commission entered said Service Order No. 910.

"10. That if there be any car short-age, this situation is caused primarily by the failure of the eastern railroads to return cars to the West.

"11. That "slow routing" is not just a convenience for a few isolated ship-pers, but is in fact a standard integral part of the distribution system employed by a large percentage of the lumber in-dustry; that said practice has been ac-cepted and encouraged by all concerned as the normal and standard method of lumber distribution; that the many small producers and wholesalers in the West, and the small users and retailers in the East have founded their entire businesses upon the existence of such practice and are inextricably bound to it so that said Service Order No. 910 will result in chaos among the small business-men so engaged."

The defendants and intervenors pro-defendant, through their appearances, admit the alleged factual situation, but, in effect, deny the legal effect thereof.

It has been agreed among counsel, with the consent of the majority of the Court, that the issue of law presented by these respective contentions should be sub-mitted to the Court upon the record and the briefs of the parties.

Accordingly we accept as true all that the plaintiffs and intervenors pro-plain-tiff allege and contend in their respective appearances.

Legislative Emergency.

The plaintiffs urge that Service Order No. 910 is invalid for the reason that no "emergency" existed at the time of its entry. This suggestion causes us to re-flect and remind ourselves that the first step of governmental tyranny is through policing and restrictive acts without no-tice or hearing to the persons thereby affected. In this view one might think that before declaring the existence of an emergency and ordering a disruption of the twenty-year existent practice of shipping via railroads by a large segment of the lumber industry of the Pacific Northwest, the Commission would afford prior notice and an opportunity to be heard by those affected by its order. However, this observation of policy is of no import for the reason that Congress has delegated the inquiry of the exist-ence of an emergency in the province and "in the opinion" of the Commission. See

Avent v. United States of America, 266 U.S. 127, 45 S.Ct. 34, 69 L.Ed. 202.

■ The Congressional authority thus granted to the Commission is an implement or enforcement of legislative action. It follows, therefore, that the definition or meaning of "emergency" must be viewed in a legislative sense as distinguished from the commonplace meaning of an "unforeseen combination of circumstances which calls for immediate action."

■ Legislative emergencies are those situations where the common good or public interest is legislatively declared to be paramount to individual interests. Common knowledge tells us that legislative action effective immediately, has on legion occasions been adopted to correct an adverse public interest situation of long standing. Furthermore, common knowledge tells us that a shortage of railroad cars available to the lumber industry in the Pacific Northwest has occurred during the summer and fall months annually for many years last past. We further know, from common knowledge, that the reason or cause of this "car shortage" is a contentious question among the railroads and the several classes of shippers. We accept the contention of the plaintiffs that the enforcement of Service Order No. 910 will not alleviate the "car shortage", however, this Court has no province in the matter as a legislative emergency declared by Congress or one of its administrative agencies is not subject to judicial review upon its merits.

"The commission having based their order on their opinion that an emergency such as was contemplated by the statute existed, it is not within the power of the court to annul their order on the ground that the administrative power conferred on the commission was unwisely or improvidently exercised. Baltimore, etc., R. Co. v. Lambert Run Coal Co., 258 U.S. 377 [42 S.Ct. 349], 66 L.Ed. 671."

■ The "opinion" of the Commission had to be based upon some informa-

tion before it and in the absence of a contention that the "opinion" of the Commission was motivated by fraud, wrongdoing or capriciousness, this Court has no office to review the "opinion" of the Commission.

"The Commission is the expert in the field of transportation. And its judgment is entitled to great deference because of its familiarity with the conditions in the industry which it regulates."

"Even though, upon a consideration of all the evidence, a court might reach a different conclusion, it is not authorized to substitute its own for the administrative judgment." Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 304 [57 S.Ct. 478, 81 L.Ed. 659]. See also, Federal Communications Commission v. WOKO, Inc., 329 U.S. 223, 229 [67 S.Ct. 213, 91 L.Ed. 204]; United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 535–536 [66 S.Ct. 687, 90 L.Ed. 821]; Barrett Line, Inc., v. United States, 326 U.S. 179, 199 [65 S.Ct. 1504, 89 L.Ed. 2128]."

East Texas Motor Freight Line, Inc., v. Frozen Foods Express, 351 U.S. 49, 76 S.Ct. 574.

### Shipper's Right of Selecting Route of Shipment.

■ The Congress has recognized that, 49 U.S.C.A. § 15(8):

"The person * * * making such shipment, subject to such reasonable exceptions and regulations as the Interstate Commerce Commission shall from time to time prescribe, shall have the right to designate in writing by which of such through routes such property shall be transported to destination, and it shall thereupon be the duty of the initial carrier to route said property and issue a through bill of lading therefor as so directed, and to transport said property over its own line or lines and deliver the same to a connecting line or lines according to such through route, and it shall

582

be the duty of each of said connecting carriers to receive said property and transport it over the said line or lines and deliver the same to the next succeeding carrier or consignee according to the routing instructions in said bill of lading * * *."

Should it be the purpose of the Commission, through the provisions of paragraph (5) of its order, to interfere with this right, ample judicial relief is open to any aggrieved party. The mentioned paragraph (5) is not, in our opinion, so vague or indefinite as to impute such an intent on the part of the Commission that would authorize judicial restraint.

### Standing of Plaintiffs.

The effect and restriction of the order applies to all shippers and is not discriminatory. Therefore, any adverse effect upon one mode of marketing as against another mode not so affected, even though engaged in business competition, is not an infringement upon a legal right. Sprunt & Son v. United States, 1930, 281 U.S. 249, 254–255, 256–257, 50 S.Ct. 315, 74 L.Ed. 832; Pittsburgh & W. Va. Ry. v. United States, 1930, 281 U.S. 479, 486–488, 50 S.Ct. 378, 74 L.Ed. 980; Edward Hines Yellow Pines Trustees v. United States, 1923, 263 U.S. 143, 148, 44 S.Ct. 72, 68 L.Ed. 216; Merchant Truckmen's Bureau v. United States, D.C.S.D.N.Y., 1938, 16 F. Supp. 998.

It follows that neither plaintiffs nor intervenors pro-plaintiff have a "legal right or interest" that is unjustly affected by Service Order No. 910.

### Conclusion.

Therefore, we conclude that plaintiffs' petition and Bill in Equity and the petition of intervenors pro-plaintiff should each be dismissed and the temporary restraining order of this Court, dated April 7, 1956, aforesaid, should be vacated as of the date of entry of a judgment of dismissal herein, all without costs to any party.

Counsel for the defendants are requested to submit appropriate judgment order.